### JAFFEE et al. v. JACOBSON et al.

*(Circuit Court of Appeals, Eighth Circuit. October Term, 1891.)*

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—FAILURE OF CONSIDERATION—ADOPTION OF CHILDREN.

A bill for specific performance of a contract alleged that complainants' uncle, a man of large means living in Denver, Colo., being married and childless, expressed a desire to adopt complainants, the two children of his deceased sister, who were then living with their father in Posen, Prussia, and opened a correspondence with their guardian expressing this desire and purpose, and asking the guardian to secure the consent of their father that complainants should be surrendered to him with full dominion and control, as if he were in fact their father; that the guardian did open negotiations with the father, who refused to consent unless some pending litigation between him and complainants in regard to the interest of the latter in their mother's estate was first settled; that thereupon the uncle procured the guardian to settle the same by relinquishing all of complainants' claims, promising that in consideration thereof, and of the father's consent, he would, upon his death, leave to complainants one-half of his estate; that, the settlement being completed, the guardian received charge of complainants, and removed them from their father's custody, leaving one of them with its grandmother in another town, there to remain until the grandmother's death, and taking the other to his own home, all as directed by the uncle in America; that, on hearing of the settlement, the uncle directed his brother to proceed from America to bring over the other complainant, whom he desired as soon as possible to come to Denver; that before his brother's departure from America the uncle died: and that the defendant, his widow, took possession of his entire estate, and refused to recognize complainants' interest therein. *Held*, that no case for specific performance was stated, as it was apparent that the main consideration for the uncle's agreement was the pleasure and mutual benefits which he expected to result from the establishment of the relation of parent and child between himself and complainants as members of his household, which consideration was never realized.

Appeal from Circuit Court of the United States for the District of Colorado.

Suit by Regina Jaffee and Helena Jaffee against Annie W. Jacobson and others for the specific performance of a contract made by her husband, Eugene P. Jacobson. Bill dismissed. Affirmed.

STATEMENT BY THAYER, J. In this case the circuit court for the district of Colorado sustained a general demurrer both to an original and amended bill of complaint, and subsequently dismissed the cause, complainants having declined to plead further. The substantial averments of the bill may be stated as follows: Eugene P. Jacobson, the husband of Annie W. Jacobson, the appellee, in August, 1878, was a lawyer of large means residing at Denver, Colo. Though married for many years, he was at the time childless. The complainants, Regina and Helena Jaffee, were his nieces, being children of a deceased sister. They were then quite young, and resided at Posen, in the kingdom of Prussia, under the care, as it seems, of a guardian by the name of Samuel Bernstein,

their mother having died but a short time previously. The bill then proceeds to aver as follows:

"That, soon after the death of their mother, their uncle Eugene P. Jacobson expressed a strong desire to adopt these complainants as his own children, he being childless and without expectation of ever having any children of his own blood; and to that end the said Eugene P. Jacobson personally solicited their guardian, Samuel Bernstein, and father, while in Europe in 1879, to procure these complainants for him, and immediately thereafter, for said purpose, did enter into correspondence with said Samuel Bernstein, the uncle of complainants, and their guardian under the will of complainants' mother, which said correspondence covered a period from the month of September, 1879, to late in the month of March, 1881; that in said correspondence said Jacobson represented to said Bernstein, complainants' guardian, that he, the said Jacobson, was very desirous of adopting these complainants as his own children, because he and his wife, the defendant Annie, were childless, and because of the love he bore to the deceased mother, his sister, and constantly urged said Bernstein to obtain the consent of complainants' father to surrender complainants to him, so that he, the said Jacobson, might have the control and dominion of complainants as though he were their father, and provide for and take care of them as his own children; that in the last letter written by the said Jacobson to the said Bernstein, which was on the 24th day of February, A. D. 1881, said Jacobson requested said Bernstein, if he procured the consent of the father of these complainants as aforesaid, to take said children from the care and control of their said father, and place the complainant Helena, who was then an infant only three years old, with her grandmother, the mother of said Eugene P. Jacobson, and leave said complainant with her said grandmother until the death of her the said complainant Helena's grandmother, or until he, the said Jacobson, otherwise directed; and to take the complainant Regina from the custody and control of her father, if he so consented, and prepare her for the voyage to America which he, the said Jacobson, was then arranging, or about to arrange, for having the said complainant Regina come to Denver as soon as possible after her father had so consented as aforesaid."

It is then stated, in substance, that in the year 1879, at the time of Col. Jacobson's visit to the old country, litigation had arisen between the complainants and their father, relative to the division of the mother's estate, of which the children claimed a portion equal in value to $4,000, and that the father was not willing to relinquish his parental control over the complainants, or consent to their coming to America, until such litigation was settled to the father's satisfaction. It is next averred:

"That in about the month of February, 1881, said Jacobson, in order to procure the consent of the father of complainants in the matters and things aforesaid, directed and requested the said guardian, Bernstein, to settle and compromise the suit between the father and these complainants, by waiving and surrendering all rights which these complainants had had or might have in their deceased mother's estate, or which they had or might have against their said father, to him, the father, at the same time he, the said Jacobson, promising and agreeing that if, by settling the said litigation in the manner aforesaid, said Bernstein shall obtain the consent of complainants' father to give complainants into the charge and care of him, the said Jacobson, he would, upon his death, leave to these complainants his entire estate, except that portion thereof, to-wit, the undivided one-half interest, which under the laws of the state of Colorado at that time was and ever since hitherto had been the widow's absolute interest in the estate of her deceased husband;.

\* \* \* that their said guardian faithfully performed and carried out said directions and instructions in the premises given by the said Eugene P. Jacobson, and did settle the litigation hereinbefore referred to between complainants and their father, dismissing said suit and surrendering to complainants' father all claims which these complainants had or might have against him, and all interest which they had or might have in their mother's estate, and did obtain in consideration thereof the consent of complainants' father to all and singular the matters hereinbefore stated, which were by the said Jacobson required, and did thereby obtain possession of complainants for said Jacobson on the 25th day of March, A. D. 1881, and immediately removed complainants from the town of Posen, where they had theretofore resided, to the town of Inowrazlau, where complainants' said guardian resided, and did place the complainant Helena in the care and custody of the mother of him, the said Eugene P. Jacobson, as by him directed, where she remained until the death of said mother, in about the year 1887; and complainants' said guardian immediately advised said Eugene P. Jacobson of all his doings in the premises."

The remaining portions of the bill show that Col. Jacobson, on being advised of what had been done, directed his brother, who lived in Wisconsin, to proceed to the old country and bring the complainant Regina to his home in Denver; but before his brother left the country on such mission Col. Jacobson died, and neither of the complainants ever in fact became members of his household. At his death the deceased left an estate of the value of $115,000, consisting largely of real estate in Denver and Gunnison county, Colo. Mrs. Jacobson, after the death of her husband, took possession of all his estate, and is still in possession of it, claiming it as her own under the laws of descent of Colorado; and has declined, and still declines, to recognize the validity of her husband's promise to leave to the complainants the undivided one-half thereof. Complainants, therefore, pray for the specific enforcement of the alleged promise, and that they may each be decreed to be the owners of an undivided one-fourth of the real estate of which the said Col. Jacobson died seised and possessed.

*R. S. Morrison* and *Geo. H. Kohn*, for appellants.

*E. T. Wells*, *H. M. Furman*, and *Thomas Macon*, for appellees.

Before CALDWELL, NELSON, and THAYER, JJ.

THAYER, J. We find it necessary to determine in the first instance upon what consideration the promise rests which the circuit court was asked to specifically enforce. There is an evident attempt made in the amended bill to make it appear that Col. Jacobson promised to leave his nieces one-half of his large estate if Bernstein, their guardian, merely obtained their father's consent to give them into his charge and custody; that the obtaining of such consent by the settlement of pending litigation between the children and their father, was the sole consideration upon which their uncle's promise was based; and that, as such consent was obtained prior to Jacobson's death, therefore the whole consideration for the promise sought to be enforced has been duly rendered and received. We are wholly unable to take that view of the case, even as it is stated in the amended bill. The complaint as amended shows that the promise counted upon is extracted from conversations and letters of Col. Ja-

cobson concerning family matters, and undoubtedly the latter were written with that freedom which usually characterizes correspondence on such subjects. It also appears that he represented in the course of the same correspondence, that he was desirous of adopting the complainants as his own children, because he and his wife were childless, and because of the love he bore their mother, his deceased sister. We think it manifest, therefore, from the face of the bill, construing it, as we must, in the light of these facts, that the consideration moving Col. Jacobson to promise to leave the complainants one-half of his estate, was not merely the consent obtained by the guardian from the father that he might have their custody, but certain benefits and advantages that were to accrue to him after his nieces came into his custody.

It must have been obvious to Mr. Bernstein, the guardian, as it is to us, that the promise in question was based upon the understanding that one or both of the complainants should become members of Col. Jacobson's household, and for a certain period (dependent, of course, upon the duration of his own and their lives) should assume, with respect to himself and his wife, the relation of parents and children, with all that that relation implies. It was of no advantage to Col. Jacobson, as the guardian must have known, that the father's consent was obtained that he might have their care and custody, unless one or both of them were actually placed in his custody and became members of his family, yielding to him in the mean time such service, affection, and obedience as a dutiful child ordinarily yields to its parents. It was the pleasure and mutual benefits which the deceased expected would result from the establishment and continuance of that relation until his death, that induced the deceased to promise to leave to his nieces an undivided one-half of his estate. We are accordingly of the opinion that the bill shows that the substantial consideration upon which the alleged promise rests was not rendered in Col. Jacobson's life-time. He died before either of the children became members of his family, before either of them emigrated to this country, and before he acquired any actual or legal control over their persons.

Viewing the case in that light, we have next to determine whether a court of equity should specifically enforce the alleged contract, and we are all agreed that this question must be answered in the negative.

We concede the law to be that a court of equity will specifically enforce a promise to leave to another the whole or a definite portion of one's estate as a reward for peculiar personal services rendered, or other acts done by the promisee, which are not susceptible of a money valuation, and were not intended to be paid for in money, provided the consideration has been substantially received at the promisor's death; and it is no objection to the enforcement of such a contract that it was entered into with a third party for the promisee's benefit, if the latter has acted under it and executed it. Such seems to be the substance of the rule fairly deducible from the authorities cited, and relied upon by appellants' counsel. *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279; *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 371; *Sutton* v. *Hayden*, 62 Mo. 102; *Sharkey* v. *Mc-

*Dermott,* 91 Mo. 648, 4 S. W. Rep. 107; *Haines* v. *Haines,* 6 Md. 435; Pom. Cont. § 114, and citations.    But we are of the opinion that a court would not be justified in decreeing specific performance in a case like the one at bar, where by reason of his untimely death the promisor did not in fact enjoy any of the pleasures, benefits, or advantages which he hoped to realize from the society, companionship, or services of his nieces. We find no precedent for decreeing specific performance under such circumstances.    In all of the cases called to our attention in which relief was afforded, it appears that the promisees had substantially discharged the obligations which they had severally assumed.    In most, if not all, instances they had lived in the promisor's household as members of his family, and had rendered faithful and affectionate services for a long period of years.    It was not possible, therefore, to administer adequate relief, otherwise than by decreeing specific performance.    For the reasons thus indicated, that the bill does not show such a substantial discharge by the complainants, during Col. Jacobson's life-time, of the obligations which the agreement contemplated were to be discharged, as will justify the specific enforcement of the alleged promise, the demurrer was properly sustained, and the decree dismissing the bill is affirmed.