[S. F. No. 991. Department Two.—July 7, 1898.]

COLERIDGE RUSSELL, Appellant, v. JOHN G. AGAR, Executor, etc., Respondent.

WILLS—CONTRACT FOR TESTAMENTARY DISPOSITION—SPECIFIC PERFORMANCE—UNCERTAINTY.—A mán may make a valid agreement binding himself to dispose of his property by last will and testament in a particular way, and a court of equity will, under certain circumstances, specifically enforce such an agreement; but no agreement can be enforced the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable, and, before an agreement for testamentary disposition can be enforced by a court of equity, it terms must not only be fair, but free from doubt.

ID.—UNCERTAIN AGREEMENT TO PAY FOR LOSS OF INTEREST IN PARTNERSHIP. An agreement to make good by will any loss sustained by reason of plaintiff continuing in the service of the testator, and giving up a proposed membership in a partnership carrying on a rival business, is too uncertain in its nature either to be enforced in equity or to sustain an action for damages against the estate of the testator.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

E. L. Campbell, and J. S. Spillman, for Appellant.

Freeman & Bates, for Respondent.

HENSHAW, J.—Plaintiff brought his action against defendant Agar as executor of the estate of Joseph McDonough, deceased, and for cause of action averred the following facts: For several years prior to the fourteenth day of September, 1894, he had been in the employ of Joseph McDonough in the capacity of salesman and collector. McDonough's business was that of a wholesale and retail dealer in coal in the city and county of San Francisco. By reason of his experience, extended acquaintance, and personal influence, plaintiff had created and controlled a large amount of McDonough's business. A short time prior to the fourteenth day of September, 1894, plaintiff was offered a fifth interest as partner in the business, goodwill, property and profits to accrue in a firm engaged in the business of dealing in coal in said city and county. Plaintiff was not re-

quired by the firm to contribute any money or other property to
the partnership, but was offered the one-fifth partnership in-
terest in consideration of his devoting his time and attention to
the business, and of giving to the firm the advantage of his ex-
perience, extended acquaintance and control over a large amount
of coal trade in the city. Plaintiff believed that it would be to
his interest to accept the offer, and explained it and its circum-
stances to his employer. McDonough, to prevent plaintiff's ac-
ceptance of the proposition, on the fourteenth day of Septem-
ber, 1894, entered into a contract with him as follows: "Plain-
tiff promised and agreed to and with said Joseph McDonough
that he, said plaintiff, would reject the offer of the aforesaid firm,
and would remain with and well and truly and faithfully serve
the said Joseph McDonough in his said business as wholesale
and retail dealer in coal, for such length of time as he, said
Joseph McDonough, should continue to carry on said business,
in consideration whereof the said Joseph McDonough promised
and agreed to and with plaintiff that he, the said Joseph Mc-
Donough, would by his last will and testament leave and be-
queath unto plaintiff such a sum of money as would make good
to plaintiff any and all loss he might, at the time of said Joseph
McDonough's discontinuance in said business, have sustained by
reason of rejecting the offer of said firm and remaining with and
serving said Joseph McDonough, said bequest by last will to be
in addition to and independent of the salary to be paid to plain-
tiff for his services." Plaintiff further averred the fulfillment
upon his part of all the terms and conditions of his contract,
the discontinuance of McDonough in business by reason of his
death, and his failure to make any bequest to plaintiff in his
will. He alleged: "That the    said firm hereinbefore re-
ferred to established a successful business, and that the value of
the assets, goodwill, and business of the firm was, at the time
of the death of said Joseph McDonough and his discontinuance
of said business, of great value, to wit, of the value of $60,000."
It is next averred that the loss sustained by plaintiff is the sum
of $12,000. The prayer of the complaint is for a decree com-
pelling the executor of the estate of Joseph McDonough specifi-
cally to perform his testator's contract.

The demurrer was both general and special. It was sustained,

and from the judgment entered in defendant's favor plaintiff appealed.

Many propositions are urged in argument against this complaint—propositions presented under special demurrers for uncertainty and ambiguity. A point of some importance is made upon a variance between the contract set forth in the claim presented to the executor and the contract pleaded in the complaint. Upon none of these questions do we deem it important to touch, for the reason that the contract is not one for a breach of which a recovery may be had at law, nor one which may be enforced in equity, as is here sought to be done, and, therefore, the general demurrer was properly sustained.

There is no question but that a man may make a valid agreement binding himself to dispose of his property by last will and testament in a particular way, and a court of equity will under certain circumstances enforce such an agreement. That question has recently been considered at some length by this court, and it is not necessary to do more than refer to the case of *Owens v. McNally,* 113 Cal. 444.

No agreement may be enforced the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable. (Civ. Code, sec. 3390, subd. 6.) Before any such contract as this will be entertained by a court of equity, its terms must not only be fair, but free from doubt. Here it may not be determined what the liability of McDonough was, assuming, as of course we do, the truth of all issuable matters which are well pleaded.

If plaintiff had represented to McDonough that he intended to commence business for himself, and McDonough had answered: You remain with me and I will make good to you whatever you may lose by not leaving me, no one would doubt that McDonough's offer was one which could not be measured or enforced. It could not be told whether the prospective business would or would not prove successful.

The actual case here presented is not essentially different. McDonough was to make good all loss which plaintiff might sustain by not entering the firm. How can that be measured, determined, or ascertained? Partnership dissensions might have arisen the next day, and a dissolution

might have followed. Plaintiff, as a partner, might have increased the volume and value of the business enormously, or by some unfortunate venture he might have wrecked it. The fact that the partners succeeded in establishing a successful business does not lead to any logical conclusion that the same result would have followed had another member been admitted to the firm. Appellant relies upon the case of *Bayliss v. Estate of Pricture,* 24 Wis. 651; but the differences between that and the case at bar are too radical to make it of assistance to him. There plaintiff sued for the reasonable value of his services under an agreement with his employer by which he was to be compensated in part by a testamentary bequest. The court took evidence, fixed the value of the services and rendered judgment for the difference between what they were worth and what plaintiff had received. In this no doubt or uncertainty existed. But here plaintiff is not suing for the value of his services, but to enforce a contract whereby he was to be paid some undetermined and undeterminable sum of money. The same reasons of uncertainty and doubt which prevent equitable relief forbid the recovery of damages at law. Since plaintiff can never show how much he lost, or that he lost anything, he never can show that he has been damaged. The case is more like that of *Graham v. Graham,* 34 Pa. St. 475, where the parol agreement was to give to plaintiff for services to be rendered "as much as to any relative on earth." The court asks: "How much did decedent promise to give? The amount is uncertain, and from the nature of the arrangement is incapable of being rendered certain."

The judgment is affirmed.

McFarland, J., and Temple, J., concurred.