[Civ. No. 1294.   Second Appellate District.—March 22, 1913.]

W. H. PUGH et al., Appellants, v. EVA E. BELL et al.,
Respondents.

WILL—ORAL CONTRACT TO MAKE—ENFORCEMENT IN EQUITY.—An oral contract to make a will, in consideration of the support of the promisor for the remainder of his life, is enforceable in equity; but the agreement must be definite and certain, and the relief not harsh, oppressive, or unjust to innocent third persons, nor against public policy.

ID.—ACTION TO ENFORCE CONTRACT—FINDINGS.—If it is found, in an action to enforce such a contract, that the contract was made, that it was fair and equitable, and that the value of the services per-

formed by the plaintiffs thereunder was not capable of being esti- mated in money, it is unnecessary further to find that they had, in reliance upon the contract, made material changes and sacrifices, tending to show that their *status quo* could not be restored, or ade- quate compensation in their behalf calculated in terms of money.

ID.—ABANDONMENT OF CONTRACT—EVIDENCE AND FINDINGS.—In this ac- tion to determine the ownership of certain property, it is held that the evidence sustains the finding of the trial court that a contract, whereby an intestate agreed to will the property to the plaintiffs in consideration of their supporting him for the remainder of his life, was mutually abandoned.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

F. A. Knight, for Appellants.

Geo. E. Cryer, for Respondents.

JAMES, J.—This action was brought by plaintiffs, who are husband and wife, for the purpose of obtaining a decree de- termining their ownership to all of the property of the estate of John A. G. Nelson, who died at Long Beach in Los Angeles County on the twenty-sixth day of November, 1909. Nelson left property, both real and personal, aggregating in value about the sum of ten thousand dollars. He died intestate and G. W. Bell, the husband of a niece of said deceased, was ap- pointed administrator of the estate. Other parties were made defendants for the reason that under the laws of suc- cession they would be heirs of the deceased. In their com- plaint the plaintiffs allege that in 1902 they were living at the city of Galesburg, Illinois, and that the deceased Nelson was living alone in a house owned by him in the city of Long Beach, California; that Nelson's deceased wife and plaintiff Gilly Pugh were sisters; that at the time mentioned plaintiff W. H. Pugh had permanent employment with a railroad com- pany, and that he owned some property at Galesburg; that Nelson being a widower and alone, proposed to plaintiffs that if they would come to California and allow him to live with them and furnish him with food, care, and attention during

the remainder of his life, and give him generally the comforts of a home, he, Nelson, to furnish plaintiffs with a house to live in, and that he would make a will under which they would be the sole beneficiaries and receive all of his property at his death; that plaintiffs consented to this proposal and, in December, 1902, moved to Long Beach and entered upon the performance of the obligations assumed by them under said agreement. They alleged that they had continued to perform all of the duties to be performed by them until the death of Nelson, except that the deceased for the last year of his life lived alone at Long Beach, at his own request and with the consent of plaintiffs, but that they were ready, able, and willing to have him live with them during the time last mentioned, and were ready, able, and willing during said time to comply with all of the terms of their agreement. Upon an answer being filed the cause came on for trial before the court sitting without a jury, and judg- ment was entered in favor of defendants. The trial court made findings of fact wherein it was determined that the contract as alleged had been entered into and that performance had commenced thereunder, but that in the month of August, 1908, plaintiffs had become dissatisfied with the agreement and abandoned it and removed from the house of Nelson and ceased to perform the obligations assumed; and that Nelson acquiesced in the abandonment of the contract and in September, 1908, removed from Riverside, where the parties had been making their home, and went back to the city of Long Beach and thereafter, until his death, lived alone and received no care, attention, board or any of the comforts of a home from plaintiffs during that period of time, and that plaintiffs from the time they separated from Nelson at Riverside in 1908, neither saw nor communicated with him. Judgment was entered accordingly, from which, and from an order denying their motion for a new trial, plaintiffs appealed.

It is established as the law of this state that a contract of the kind claimed to have been made by plaintiffs with Nelson may be enforced in equity, even though it rests in parol. Conformable to the administration of equitable remedies, the agreement must be definite and certain and the relief must not, as is said in the decision cited below, be ''harsh or

oppressive, or unjust to innocent third parties, or against public policy." The first and the leading case decided by our supreme court, wherein this subject is fully and learnedly considered is that of *Owens* v. *McNally,* 113 Cal. 444, [33 L. R. A. 369, 45 Pac. 710]. Decisions in like cases subsequently considered by the same court are in harmony with that cited. (See *Russell* v. *Agar,* 121 Cal., 396, [66 Am. St. Rep. 35, 53 Pac. 926]; *McCabe* v. *Healy,* 138 Cal. 81, [70 Pac. 1008].)

Complaint is made by appellants because the court failed ·to find upon the allegations of the complaint which narrated the condition of plaintiffs at the time they made the contract with Nelson and the facts showing that they had, in reliance upon the contract, made material changes and sacrifices; all tending to show that their *status quo* could not be restored, or adequate compensation in their behalf calculated in terms of money. The court found the ultimate fact that the contract was made as alleged; that it was fair and equitable in its terms, and that the value of the services performed by plaintiffs thereunder was not capable of being estimated in money. This was a sufficient finding of the making of the contract and of the legal fact that it was entitled to be enforced in the light of equity, had not the trial judge also found that there had been a mutual abandonment of the contract by the parties to it. As those issues about which it is complained more particular findings of fact should have been made were sufficiently determined in favor of appellants, no ground for complaint on that score exists.

No error is shown because of the ruling of the trial judge in permitting plaintiff W. H. Pugh to answer on cross-examination as to a conversation had with defendant Bell, after Nelson's death, relative to the value of the board furnished by plaintiffs to Nelson. The answer made by the witness to the question objected to gave no point to the objection. Pugh had testified that a conversation took place between himself and Bell after Nelson's death, and that they had "figured" together. When asked at how much the board furnished Nelson was figured, objection being made that the figures were in writing and that the writing would furnish the best evidence, counsel for the other side stated that there had been some rough memoranda made which "they" did not then have, whereupon the objection was overruled. The

witness in answering did not state that any amount had been talked of or figured on account of board, and did not attempt to testify as to the contents of any writing.

Objection was also made to a question asked the witness Lizzie B. Brinkley referring to conversations had with plaintiff Mrs. Pugh. The question was as to what Mrs. Pugh had said regarding the relations of herself and husband with Nelson, the deceased. It was objected that she should not be allowed to testify as to any conversation had with Mrs. Pugh outside of the presence of the coplaintiff and husband. The answer of the witness to this question was: "She said the arrangements were to board him and keep him for the house rent." The answer to this objection is that, conceding that Mrs. Pugh's statements made when her husband was not present could not be given in evidence as binding upon the latter, the answer of the witness referred to arrangements under which Nelson came to live with plaintiffs, and the only materiality it could have would be to throw some light upon the matter of the terms of the contract. As the trial judge found that the contract had been made as alleged by plaintiffs, the admission of this testimony, if error, was not prejudicial.

Finally, and as the main contention urged on behalf of appellants, it is insisted that there was not sufficient evidence to sustain the finding of the court as to the abandonment of the contract made between plaintiffs and Nelson. It will be well to preface the consideration of this question with the statement that, if the facts and circumstances referred to in the testimony were such as to create any conflict of evidence, such conflict must be resolved in that direction which will sustain the judgment of the trial court. Where such conflict is shown to exist, the question as to which party has produced the greater weight of evidence is one which the appellate court has no function to pass upon. In cases of this kind where one of the contracting parties has died and his voice cannot be raised to contradict statements as to the terms of the agreement and of the performance had thereunder, necessarily the trial court is led to base its conclusion many times upon the testimony as to the acts of the parties and all of the circumstances and conditions surrounding them. This evidence of conditions and circumstances may often-

times illustrate well the truth of the old saying that "actions speak louder than words." There was evidence tending to show that some cause of difference arose between Nelson and the Pughs not long prior to the time in 1908 when Nelson left Riverside and returned to Long Beach. A short while before Nelson left Riverside plaintiffs removed out of the house which was owned by Nelson. Nelson continued to live in the house for several weeks and then returned to Long Beach. He lived at Long Beach alone from August, 1908, until the time of his death, more than a year and it was shown that he saw neither of the plaintiffs during that interval of time. There was testimony furnished by witnesses G. W. Bell and Eva E. Bell to the effect that after Nelson died, plaintiff W. H. Pugh stated to them that the deceased did not owe him anything. Proof was made also that subsequently a claim was filed with the administrator of Nelson's estate, plaintiff W. H. Pugh being the claimant, whereby said plaintiff sought to collect a large amount of money which he then asserted was due him for board, washing, care and other material and services furnished to the deceased. In a letter accompanying the claim, and addressed to G. W. Bell and his wife, plaintiff W. H. Pugh made this statement: "When Brother Nelson and I separated on September 13, 1908, I, W. H. Pugh called for a settlement. Nelson said to me he was hard up and he knowed he owed me a big bill, and not to press him, that it would come out all right later on. So I told him all right, use his own time— that his word was as good as gold with me." When cross-examined regarding the writing of this letter and the statement of the account as contained in his claim against the estate, Pugh testified that he had consulted an attorney about the claim and had believed at that time that he could not collect on his contract. Questions were then asked him and he made reply thereto as follows: "Q. Did you tell Mr. Hall when you went to him to prepare this claim, that Mr. Nelson had agreed to give you $10 a month for his board? A. No, I didn't tell all that. We framed that. Q. What is that? A. We framed that. Q. What do you mean by that? A. Well, he helped me fix it up. Q. You mean you framed up this account, you mean? A. We framed it up, yes, the bill I put in. Q. Did he tell you how much to put it

in for? A. Yes, sir; he says, make it as big as you can. Q. How is that? A. He says, make it as big as I could. Q. He asked you to swear that that was correct did he? A. He surely did. Q. Then you swore to it? A. Yes.'' When cross-examined as to the statement contained in the letter which accompanied the bill and which is quoted above, the same witness answered. ''A. This. was all framed up. I never had that talk with Mr. Nelson at all. Q. You framed it up? A. I framed it up to save myself.'' Weighing all these facts and circumstances the trial judge was fully warranted in deciding against the assertion of appellants that they had never abandoned the agreement but that it was understood that they were to later follow Nelson to Long Beach and there resume joint habitation with him and continue to fulfill the obligations of the contract until his death. At any rate, it must very clearly be seen that the record does not present a case of unconflicting evidence and that under the familiar rule hereinbefore adverted to this court cannot disturb the judgment.

The judgment and order are affirmed.

Allen P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1913.