[Civ. No. 13309. Second Dist., Div. Two. Dec. 17, 1941.]

WILLIAM A. FOWLER, Appellant, v. ETHELBELL M. HANSEN et al., Respondents.

James V. McCandless, Wendell W. McCanles and W. I. Gilbert, Jr., for Appellant.

William Ellis Lady, Franklin Riter, Wm. J. Cowan, Meserve, Mumper & Hughes, Edwin A. Meserve and Roy L. Herndon for Respondents.

SCOTT (R. H.), J. *pro tem.*—Plaintiff appeals from an adverse judgment in a suit to compel specific performance of a contract to make a will and to impress a trust upon the estate of decedent, Mrs. Alice Bauer. Judgment was entered following order granting motion for judgment on the pleadings and on a portion of the opening statement. Plaintiff was denied leave to file an amended complaint.

The record discloses that plaintiff William A. Fowler married Ella Vermillion, sister of decedent Mrs. Bauer, in 1896. Their mother, Mrs. Malinda Vermillion, went to live with the Fowlers in their home and was cared for by them until her death in May, 1922. Ella Fowler passed away in 1930, and a few months later Mrs. Bauer came to live with plaintiff and was cared for in his home until her death in March, 1939. Her sole heir was defendant Ethelbell M. Hansen, granddaughter and adopted child. Decedent left a will dated November 15, 1937, leaving her granddaughter "one dollar and no more because of her unkindness to me," five hundred dollars each to a sister and a brother and "the balance of my estate to the old ladies Home located in Salt Lake Utah to be used for the comfort of the old ladies." This old ladies home was identified as being defendant The Sarah Daft Home.

Plaintiff bases his suit on a claim that decedent, Mrs. Bauer, agreed to execute and leave a will under which he and his wife, who has since died, would receive one-half of her estate. It is alleged that she executed such a will but that it was not in effect at the time of her death. The complaint contained allegations as follows: that on or about October 1, 1896, decedent wrote a letter to the Fowlers asking them to take the mother, Mrs. Vermillion, into their home and care for her during her lifetime, stating that decedent "would see that they were fully and generously paid for such service and care"; that about December 1, 1896, decedent came from her home in Salt Lake City, Utah, to the

home of the Fowlers in Texas and entered into an oral agreement with them for the care of Mrs. Vermillion, promising that decedent "would pay and fully remunerate plaintiff and his wife for such care, and if she was unable to do so during her lifetime she would leave a will giving them one-half of her estate." In his opening statement counsel for plaintiff indicated that he was not relying upon these agreements in 1896.

The complaint contained further allegations upon which plaintiff chiefly relied, to the effect that about July 20, 1908, the Fowlers received a letter from Mrs. Bauer which "reaffirmed the aforesaid oral contract" and requested them to move to Los Angeles, bringing Mrs. Vermillion with them, to establish a home there, care and provide for the mother and "administer unto her welfare and wishes and render unto her love and affection until the time of her death"; and that decedent promised that in return therefor she, Mrs. Bauer, would make and leave a will giving plaintiff and his wife one-half of all her property. It is alleged that plaintiff and his wife fully performed the services called for by the contract.

The complaint continues by alleging an oral agreement by Mrs. Bauer when she came to live with plaintiff in 1931, to the effect that if he would similarly care for her she would make provision in her will leaving him one-half of her estate, and that he carried out the terms of this agreement and cared for Mrs. Bauer until her death in 1939. Allegations were included to the effect that the services thus rendered to the mother and to Mrs. Bauer were so peculiar, extraordinary, unusual and exceptional in nature that they were not intended to be and could not be compensated for in money.

The only other portion of the opening statement to which respondents direct our attention as having been in any way determinative of the trial court's ruling is the declaration that decedent left an estate valued at about $240,000. Our primary concern, therefore, has been the question of the sufficiency of the complaint. Respondents concede that their motion for judgment on the pleadings, like a general demurrer, admits for purposes of argument every well pleaded allegation of the complaint. (21 Cal. Jur. 234, sec. 163.) We have considered, therefore, the question whether such

an agreement as the one here involved is valid and enforceable, and if so what elements must be pleaded so as to state facts sufficient to constitute a cause of action.

■ A person may make a valid agreement binding himself to dispose of his property in a particular way by last will and testament, and a court of equity will enforce such an agreement specifically by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract. Such a contract must show adequate consideration, must be definite and certain, and the remedy asked for must not be harsh or oppressive or unjust to innocent third parties or against public policy.

■ Where services are to be rendered as consideration for the agreement they must be of such a peculiar, extraordinary or exceptional character that it is impossible to estimate their value by any pecuniary standard or to adequately compensate for them in money. (*Owens* v. *McNally*, 113 Cal. 444 [45 Pac. 710, 33 L. R. A. 369]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Monsen* v. *Monsen*, 174 Cal. 97 [162 Pac. 90]; *Steinberger* v. *Young*, 175 Cal. 81 [165 Pac. 432]; *Pugh* v. *Bell*, 21 Cal. App. 530 [132 Pac. 286]; *Flood* v. *Templeton*, 148 Cal. 374 [83 Pac. 148].) ■ Prior to the amendments in 1905 and 1907 of our codes (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973) it was not required that such an agreement should be in writing. (*Staples* v. *Hawthorne*, 208 Cal. 578 [283 Pac. 67].)

In considering the nature of such cases in which relief was afforded, the court in *Jaffee* v. *Jacobson*, 48 Fed. 21 [1 C. C. A. 11, 14 L. R. A. 352], observed that "In most, if not all, instances they (the promisees) had lived in the promisor's household as members of his family, and had rendered faithful and affectionate services for a long period of years. It was not possible, therefore, to administer adequate relief, otherwise than by decreeing specific performance." In *Flood* v. *Templeton, supra,* the consideration for the contract by decedent to devise certain property on his death was not any service but a fixed monetary demand. On appeal judgment for plaintiff was reversed because in such a case the action should be one in law, not in equity. In that case, however, the court quoted with approval from the case of *Stellmacher* v. *Bruder*, 89 Minn. 507 [95 N. W. 324, 99 Am. St. Rep. 609], as follows: "If the

consideration for the contract be labor and services which may be estimated, and their value liquidated in money, so as to reasonably make the promisee whole, specific performance will not be decreed. But where the consideration of the contract is that the promisee shall assume a peculiar and domestic relation to the promisor and render to him services of such a peculiar character that it is practically impossible to estimate their value by any pecuniary standard, specific performance will be decreed." It is apparent that in the instant case the allegations of years of care by plaintiff and his deceased wife sufficiently meet the requirements of equity that such services must be peculiar, for in the very nature of things twenty-six years, from 1896 to 1922, or even fourteen years, from 1908 to 1922, so changed conditions in the lives of the Fowlers that "it is out of the power of an earthly tribunal to restore the parties to their original situation and environment." (*Healey* v. *Simpson,* 113 Mo. 340 [20 S. W. 881].)

From the foregoing it will appear that this case is readily distinguishable from the cases of *De Mattos* v. *McGovern,* 25 Cal. App. (2d) 429 [77 Pac. (2d) 522], in which plaintiff was employed by decedent in the conduct of his business; *Zaring* v. *Brown,* 41 Cal. App. (2d) 227 [106 Pac. (2d) 224], in which an ordinary lodging-house proprietor rendered personal services in giving unprofessional care and attention to a sick man; *Morrison* v. *Land,* 169 Cal. 580 [147 Pac. 259], in which plaintiff rendered services as assistant manager of a hotel; and *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84], in which the promise to make provision for plaintiff in his will was made by decedent solely by way of security to plaintiff for the payment of a specific sum of $5000. In *Baumann* v. *Kusian,* 164 Cal. 582 [129 Pac. 986, 44 L. R. A. (N. S.) 756], where decedent took two orphan children and cared for them, and they later sought to claim her estate, relief was denied them because the trial court found there was no contract to make a will and leave property to them, and because of the absence of proof of a definite and certain contract the adverse judgment was upheld on appeal.

The instant case is likewise readily distinguishable from the cases of *Kurtz* v. *De Johnson,* 42 Cal. App. 221 [183 Pac. 588], *Christin* v. *Clark,* 36 Cal. App. 714 [173 Pac.

109], and *Parsons* v. *Cashman,* 23 Cal. App. 298 [137 Pac. 1109, 1111].

In *McCabe* v. *Healy, supra,* decedent, a man of fifty-four years, resident of California, visited his old home in Ireland in 1881 and persuaded his nephew, a lad of fourteen years, to accompany him on his return to this state.  He agreed with the boy and his mother and guardian that if the nephew would return with him to California, accept his care and instruction and in turn industriously learn and care for the uncle's business and property, the latter would make a will leaving the nephew his property.  Our Supreme Court reviewed comparable cases in which equity has compelled the granting of relief, and affirmed the judgment for the nephew. It distinguished the case of *Owens* v. *McNally, supra,* observing that there the court had denied relief not only because the agreement lacked certainty and definiteness but also because subsequent to the making of the contract rights of innocent third parties had intervened, and specific performance, if decreed, would be harsh and oppressive and unjust to those innocent third parties.

In *Staples* v. *Hawthorne, supra,* a judgment adverse to plaintiff was upheld because of the unreliable nature of the evidence offered by plaintiff, the court on appeal stating, "we think there is ample evidence of facts and circumstances which tended to impeach the credibility of the evidence relied upon by the plaintiff."

In *Monsen* v. *Monsen, supra,* judgment for plaintiff was reversed because the evidence was insufficient to support the findings of the trial court as to the contract upon which the action was alleged to have been based.  But in *Steinberger* v. *Young, supra,* the judgment favorable to plaintiff was upheld because the evidence was "materially stronger than that presented in the Monsen case."  It should be noted that the evidence thus approved in the Steinberger case included declarations of decedent, offered by plaintiff, which "were properly admitted as being declarations of a decedent against her pecuniary interest."  Evidence offered in the same case by the heirs to show declarations of decedent in favor of their position was properly rejected. (*Rulofson* v. *Billings,* 140 Cal. 452 [74 Pac. 35].)

It appears that the written agreement of July, 1908, was definite and certain.  The allegation that the letter "reaffirmed the aforesaid oral contract" must be viewed as no

more than the statement of a conclusion, which for purposes of our consideration on this appeal should be disregarded. The complaint alleges that the Fowlers received a letter from decedent asking them to do certain definite things: (1) move to Los Angeles, (2) bring Mrs. Vermillion with them, (3) establish a home where the mother could live with them, and (4) care and provide for the mother and administer unto her welfare and wishes and render unto her love and affection until the time of her death. In the same letter decedent promised as compensation that she would leave a will giving them one-half of her property. The complaint further alleges that the Fowlers fully and faithfully performed their part of the contract. It would be a strained and unwarranted construction of the quoted phrase to hold, as urged by respondents, that by inference it included language to the effect that decedent would fully pay the Fowlers for all they were doing for her mother, and that only in the event of her inability to do so would she make provision for them in her will. On the contrary, it appears from the pleading itself that the compensation intended by decedent for the peculiar and exceptional services and loving care and attention which they were giving to the mother—and their acts in taking up residence in a city other than that in which they had been living, and, we may assume, undergoing readjustments in their social and economic relationships—was to be, not any payment in dollars or cents during her lifetime, but that upon her death they should benefit to the extent of one-half of her estate. There is no indication in the pleadings that during the twelve years from 1896 to 1908 Mrs. Bauer had paid anything for the care of her mother, or that she intended to do so from 1908 to the time she might pass away, except for the quoted phrase as to reaffirmation.

As we examine the complaint in considering whether the Fowlers carried out decedent's wishes in regard to her mother, we find a further allegation of an agreement under which Mrs. Bauer herself entered the home of plaintiff to be loved and cared for, and remained there until her death; and, as observed in *Pugh* v. *Bell,* 21 Cal. App. 530 [132 Pac. 286], at page 535, such cases often "illustrate well the truth of the old saying that 'actions speak louder than words.'" Proof of these facts would justify an inference that Mrs. Bauer was so impressed by the way in which plaintiff's home

had provided for her mother the priceless ingredients of affection and companionship as well as satisfaction of her material wants that she chose the same home as a haven during her own declining years.

In analyzing the relationship of the parties to determine whether the relief sought by plaintiff would work an injustice or be unduly harsh toward the respondents, it appears evident that no injustice or harshness would ensue. In the case of respondent Ethelbell M. Hansen, decedent in her will says: "In this I will to my Granddaughter Ethelbell M. Hansen one dollar and no more because of her unkindness to me." As to the other respondent, she designates it "the old ladies home located in Salt Lake Utah."

As to the adequacy of consideration for decedent's promise, we have noted the allegation that Ella Fowler, as well as decedent, was a daughter of Mrs. Vermillion. Both daughters were legally and morally bound to support their mother, but that obligation was not as great as far as plaintiff was concerned. Mrs. Bauer chose to leave the tender personal ministrations for the aging mother to her younger sister, and to ask not only that the Fowlers assume full financial and personal care and attention to the mother but also that, at Mrs. Bauer's request, they remove to another city and assume the burdens and readjustments incidental to such a change. In such a case either a benefit to the promisor or a detriment to the promisee is sufficient consideration. (Civ. Code, sec. 1605; *Parsons* v. *Cashman, supra,* at page 302.)

Respondents urge that plaintiff is seeking to enforce in his own behalf a contract which he claims was made during the lifetime of his wife, and which provided for the making of a will by the terms of which both plaintiff and his wife would be beneficiaries. They question the sufficiency of the complaint in view of the fact that Mrs. Fowler passed away in 1930. We are not warranted in assuming that the adverse ruling of the trial court was based on such an objection, for it is self-evident that even if the benefits under the will, as contemplated by the contract, were to be several and not joint, that fact would not of itself bar plaintiff from his right to such recovery as from the evidence might appear equitable, and that element in the case could not justify an adverse judgment on the pleadings. It is a question to which the trial court will address itself at the appropriate time.

Respondents further suggest that "appellant (plaintiff) must necessarily predicate his claim to equitable relief entirely upon the invalid oral agreement of 1931, because the earlier agreements were superseded and abandoned." It is argued that the agreement of 1931 had the effect of superseding and abandoning any agreements of 1896 or 1908, although it is admitted that in 1931 the parties were not all the same, the services to be rendered were different and conditions were changed. By the contract of 1908 decedent is alleged to have obligated herself to make a will leaving to plaintiff and his wife one-half of her estate in consideration of their services to the mother. The allegations concerning this contract are sufficient to state a cause of action. Further allegations that in 1931 decedent obligated herself to leave plaintiff, then a widower, one-half of her estate in consideration of his services to her personally do not adversely affect the cause of action previously stated. The allegation that in 1931 Mrs. Bauer "reaffirmed the terms of the aforesaid written agreement" is surplusage and must be disregarded. The services to the mother had been completed by plaintiff and his wife. There was nothing more to be done by them to entitle them to the benefits promised by decedent. The fact that Mrs. Bauer may have said in 1931 that she would do that which she was already bound to do, as a prelude to entering upon a new and different contract, could in no way be so construed as to relieve her of the obligation to perform her part of the previous contract. No authority cited by respondents upholds any such theory.

Plaintiff asked leave of the court, which was denied, to file an amended complaint. Among other allegations not included in the original complaint it was asserted that he received a letter about January, 1897, containing a request that the Fowlers keep and care for the mother and agreeing to leave a will giving them one-half of decedent's property, and they accepted her offer and performed the services. From the record before us it appears that the amendment should be allowed.

Judgment reversed.

Moore, P. J., and Wood (W. J.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 11, 1942. Edmonds, J., Houser, J., and Traynor, J., voted for a hearing.