261 Cal.App.2d 670 (1968)
68 Cal. Rptr. 210
ANNIE MARIE PORPORATO, Plaintiff and Appellant,
v.
ANITA DEVINCENZI, Individually and as Executrix, etc., Defendant and Respondent.
Docket No. 23789.
Court of Appeals of California, First District, Division Four.
April 30, 1968.
*672 Eisner & Titchell and Haskell Titchell for Plaintiff and Appellant.
William L. Ferdon, Charles F. Lipman, Edward P. Nelsen, Chickering & Gregory, Andriano, Cicoletti & Andriano and Theodore Cicoletti for Defendant and Respondent.
CHRISTIAN, J.
Plaintiff appeals from a judgment of dismissal entered when the court sustained a demurrer to her complaint for quasi-specific performance of an alleged oral agreement to devise real property. The following narrative takes at face value the material allegations of the amended complaint.
Appellant was the daughter-in-law of John Porporato, decedent; respondent was the residuary beneficiary of decedent's will and devisee of real property located on Marina Boulevard at Webster Street in San Francisco.
Appellant married decedent's son in 1935. The couple moved to San Francisco from Omaha and lived for a year and a half in a flat owned by the decedent. During this period a close and tender relationship developed between appellant and *673 decedent. When decedent decided to build a residence on his Marina property, he also had a second dwelling constructed on the lot for the use of his son and daughter-in-law. Decedent's wife refused to move from North Beach to the Marina dwelling; thereupon decedent asked appellant and his son to move into the main house. They did so, and appellant has lived there ever since.
Appellant's husband entered the Navy in 1942. In 1943 appellant gave birth to a son. During appellant's pregnancy, decedent was a frequent visitor at her residence. Decedent idolized his grandson who greatly resembled the boy's father.
While appellant was visiting her family in Omaha, she received word that her husband had been killed in action. Her family wanted her to remain in Omaha. She believed that it would be better for her to do so as she could resume her nursing career and be near her family. Decedent, however, begged her to return to the Marina Boulevard home and raise her son in San Francisco in order that decedent would have the companionship of his grandson. The relationship with his grandson brought comfort to decedent and eased the burden of his loss. At this time decedent orally promised that if appellant remained in San Francisco, she could continue to reside in the Marina home and he would devise the property to her. Appellant placed great trust in decedent and believed that if she complied with his wishes, he would bequeath the property to her. In reliance on this oral promise appellant did remain in San Francisco. Appellant, living on a small pension, told decedent that she desired to obtain employment to augment her income, and also to qualify for social security benefits. Decedent opposed this idea and told appellant he would like her to remain at home and raise his grandchild. He reiterated his promise that the property would pass to her on his death. Relying on this assurance, appellant did not seek employment. Appellant was thus unable to acquire any savings or to qualify for social security benefits.
Absent decedent's promises to leave her the property, appellant would have settled in Omaha and secured employment there as a nurse. Moreover, once she decided to remain in San Francisco, she relied on decedent's promises to leave her the property and therefore gave up any opportunity for employment.
Contrary to his promises to appellant, decedent left the Marina property to respondent. Thus, it is contended, *674 respondent holds the property for appellant's use and benefit. Appellant prayed judgment that respondent had no right, title or interest in the property and that appellant be declared the owner thereof. She also prayed for an order restraining respondent from disposing of the property.
The trial court sustained a demurrer on the following grounds: (1) no cause of action was stated; (2) the complaint alleges an oral contract to make a will but pleads no facts avoiding the statute of frauds; (3) the facts pleaded do not show estoppel: there is no showing of either unjust enrichment or unconscionable injury; (4) no cause of action for monetary relief is stated because there is no allegation that any claim was made against decedent's estate.
Appellant's claim is that decedent breached his oral agreement to devise her the Marina property. The statute of frauds provides that oral contracts to make a will are unenforceable (Civ. Code, § 1624, subd. 6); but it is contended that the complaint alleges facts sufficient to estop respondent from taking advantage of the statute of frauds.
[1] The relief which may be granted in an action for quasi-specific performance of a contract to bequeath or devise property is the imposition of a constructive trust upon the property in favor of the promisee-plaintiff. It differs from the relief which would be available in a traditional specific performance action, and the remedy bears a different name, because the court cannot compel the making of a will.
[2] The following elements are requisite to relief: (1) a contract sufficiently definite and certain in its terms to be enforced (Civ. Code, § 3390, subd. 6; Kennedy v. Bank of America (1965) 237 Cal. App.2d 637, 646 [47 Cal. Rptr. 154]; Henderson v. Fisher (1965) 236 Cal. App.2d 468, 473 [46 Cal. Rptr. 173]); (2) that the contract was just and reasonable (Civ. Code, § 3391, subd. 2; Henderson v. Fisher, supra); (3) that the plaintiff has performed his side of the bargain (Civ. Code, § 3392; Shive v. Barrow (1948) 88 Cal. App.2d 838, 847 [199 P.2d 693]; (4) that the promisor has failed to perform; and (5) that the contract was supported by adequate consideration.
As in all cases which invoke equitable powers, the plaintiff must show (6) that her remedy at law is inadequate. (Henderson v. Fisher, supra, 236 Cal. App.2d 468, 473-474; Zellner v. Wassman (1920) 184 Cal. 80, 84 [193 P. 84] [inadequacy of legal remedy is the "keystone of equitable jurisdiction"].)
If specific performance is sought, the foregoing elements *675 must be pleaded whether the contract sued upon is written (Henderson v. Fisher, supra, 236 Cal. App.2d 468, 470, 473) or oral (Kennedy v. Bank of America, supra, 237 Cal. App.2d 637, 646). Where the contract was oral as is alleged here, the complaint must also allege (7) that the defendant is estopped from reliance upon the statute of frauds because failure to enforce the contract would result in either unconscionable injury to the plaintiff or unjust enrichment of the defendant. (Estate of Baglione (1966) 65 Cal.2d 192, 197-198 [53 Cal. Rptr. 139, 417 P.2d 683]; Day v. Greene (1963) 59 Cal.2d 404, 410-411 [29 Cal. Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; Monarco v. Lo Greco (1950) 35 Cal.2d 621, 623-624 [220 P.2d 737].)
The complaint unquestionably alleges the first four elements. [3a] Turning to the adequacy of the consideration, appellant alleged that the decedent promised to permit her to occupy a portion of the Marina property, and devise the property to her, if she would comply with his request to remain there and raise her child near decedent. In exchange for the promise, "she agreed to ... remain in San Francisco."
Thus, the consideration she exchanged for the promise now sued upon was her agreement  in 1945  to do as the decedent asked. [4] The proper time for testing the adequacy of consideration is as of the formation of the contract, and the court may consider "such factors as the relationship of the parties, their friendship, love, affection, and regard for each other, and the object to be attained by the contract." (Henderson v. Fisher, supra, 236 Cal. App.2d 468, 474.) [5] Appellant's promise was exchanged for the decedent's: and in a bilateral contract "Mutual promises are concurrent considerations, ..." (Papadakos v. Soares (1918) 177 Cal. 411, 412 [170 P. 1114].) [3b] Her agreement to raise her son near the decedent was manifestly a "benefit conferred, or agreed to be conferred, upon the promisor... to which the promisor [was] not lawfully entitled" and as such was a good consideration for the decedent's promise to her. (Civ. Code, § 1605.)
It is also sufficiently alleged that appellant performed the contract she seeks to enforce. (Civ. Code, § 3392; Shive v. Barrow, supra, 88 Cal. App.2d 838, 847.) [6a] In the typical quasi-specific performance case, personal services were bargained for and rendered as the consideration for the promise sued upon. When enforcement of the promise is sought, quasi-specific performance relief may be denied because the *676 services rendered were adequately compensable in money.[1] In other cases, where a money payment would not adequately compensate for the services, relief has been granted.[2] These cases have fallen into one category or the other depending upon whether the plaintiff has shown the inadequacy of legal remedy which is requisite to equitable relief. But "services" in a menial or other wage-compensable sense are not a sine qua non of the consideration which will support a contract to bequeath or devise property. Quasi-specific performance of such a contract has been granted where the promisee-plaintiff had agreed to and did "live near" the promisor "and furnish her with companionship" without performing services as such (Jones v. Clark, supra, 19 Cal.2d 156, 159); and again *677 where the promisor, although in his last illness, "desired none of the usual services of a nurse or housekeeper" and received from the promisee only "comfort, care and consolation." (Walker v. Calloway, supra, 99 Cal. App.2d 675, 682.)
The first question, then, is whether appellant's complaint sufficiently shows that she is without adequate remedy at law. We hold that it does, for two reasons. First, the complaint alleges a contract for the transfer of real property. [7] Because of the historic treatment of land as unique, it is presumed in such case that damages would not adequately compensate for the breach; specific performance  or, in the present case, quasi-specific performance  of the contract will be granted "as a matter of course unless some other equitable reason for denial is shown"; the party seeking enforcement need not establish inadequacy of the legal remedy, and may rely upon the presumption. (Henderson v. Fisher, supra, 236 Cal. App.2d 468, 473; 5A Corbin on Contracts, § 1143, pp. 126, 132-134.)
Secondly, the complaint independently shows the inadequacy of her legal remedy by virtue of the unusual character of the "services" she allegedly rendered. [6b] An agreement in consideration of personal services is subject to specific performance if the services are "of such a peculiar, extraordinary or exceptional character that it is impossible to estimate their value by any pecuniary standard or to adequately compensate for them in money." (Fowler v. Hansen, supra, 48 Cal. App.2d 518, 522; Kennedy v. Bank of America, supra, 237 Cal. App.2d 637, 647.) This requirement of "peculiar" services as a ground for specific enforcement of an agreement to bequeath or devise property exists whether the agreement is oral or in writing. (See, e.g., Mutz v. Wallace, supra, 214 Cal. App.2d 100, 104-105, 107, 111-112; Brown v. Freese (1938) 28 Cal. App.2d 608, 610, 612, 620 [83 P.2d 82].) The requirement relates, not to the statute of frauds or to an estoppel to take advantage of the statute, but to the question of whether the legal remedy is inadequate: and the decisions speak of "peculiar" services in dealing with the latter question only.
In most of the cases granting quasi-specific performance of a contract to devise property, the "services" rendered as consideration for the agreement were menial or otherwise commonplace, but they were "peculiar" because  typically, by reason of a family or other close relationship between the contracting parties  only the promisee could perform them. *678 (See factual summaries of cases cited, footnote 2, supra.) [8] Under the facts alleged in her complaint, only appellant  by living in San Francisco with her child after 1945  could have provided the solace sought by the decedent in his bereavement at the loss of his son. We therefore conclude that she alleges the rendition of "services" which were "peculiar, extraordinary or exceptional" because only she could have performed them; and that, having done so in the "continuation of a close family relationship," she sufficiently alleges that she is without an adequate legal remedy. (Monarco v. Lo Greco, supra, 35 Cal.2d 621, 626.)
[9a] The next question is whether facts are alleged sufficient to show that respondent is estopped from reliance upon the statute. The complaint alleges that in complying with the decedent's request that she live and raise her child in San Francisco, appellant forsook the advantages of living in Omaha commencing in 1945 and of obtaining employment later. Respondent relies on Kennedy v. Bank of America, supra, 237 Cal. App.2d 637, 648, where allegations of similar sacrifices and forbearances were held to be insufficient. But in Kennedy the court had previously held (id. at p. 647) that the plaintiff's remedy at law was adequate: and its ensuing discussion (pp. 648-649, citing Tompkins v. Hoge (1952) 114 Cal. App.2d 257 [250 P.2d 174], and Murdock v. Swanson, supra, 85 Cal. App.2d 380, 385) merely points out that her sacrifices were elements of damages in the exercise of the legal remedy to which she was restricted. [10] Kennedy holds only that the detriment incurred by a plaintiff in the performance of a contract will not establish a cause of action to enforce the contract in equity if she has a cause of action at law for its breach.
However, where a plaintiff establishes that her remedy at law is not adequate, equitable relief may be appropriate; and, where the contract was oral, the detriment incurred in performing it may retain its materiality as tending to show change of position which will raise an estoppel and avoid the statute of frauds.
[9b] In this light we conclude that appellant's complaint pleads sufficient facts to raise an estoppel. The complaint alleges that appellant did come to San Francisco with her child to live near the decedent. (Cf. Mutz v. Wallace, supra, 214 Cal. App.2d 100, 103, 112 [promisee moved from Canada to California]; Walker v. Calloway, supra, 99 Cal. App.2d 675, 677 [Michigan to Los Angeles]; Jones v. Clark, supra, 19 Cal.2d 156, 157-158 [New Hampshire to California]; Fowler *679 v. Hansen, supra, 48 Cal. App.2d 518, 521 [Texas to Los Angeles]; Barry v. Beamer, supra, 8 Cal. App. 200, 204-205 [Marysville to Lassen County, California]; McCabe v. Healy, supra, 138 Cal. 81, 84 [Ireland to California].) It alleges that she did not resume her former home in Nebraska. (Cf. DeHermosillo v. Morales, supra, 146 Cal. App.2d 819, 823-824, 829 [promisee, visiting in California when the promise was made there, did not return to her home in Mexico].) In all of the cases cited, quasi-specific performance relief was granted.
It is true that appellant did not uproot herself from elsewhere to keep her promise, but only remained in San Francisco, where she had already lived for several years. But the complaint also alleges that appellant was in Omaha when her husband was killed, and that she believed at the time that her interests and those of the child would be best served if she remained there with her own family and friends and obtained employment which was available to her there: nevertheless, she came back to San Francisco in reliance upon the decedent's promise.
According to the allegations of the complaint, appellant returned to San Francisco as a new widow with an infant, entering a new and wholly different mode of life which cannot justly be characterized as merely "remaining" in her former home, as contended by appellant. Her return to California was a significant change of position. That being so, she sufficiently pleads an estoppel; having alleged that she gave 20 years of her own life and the childhood years of her son in keeping her bargain, she will suffer "unconscionable injury" if she is not permitted to enforce the contract.
The judgment is reversed.
Devine, P.J., and Rattigan, J., concurred.
A petition for a rehearing was denied May 29, 1968, and respondent's petition for a hearing by the Supreme Court was denied June 26, 1968.
NOTES
[1] E.g.: Kennedy v. Bank of America, supra, 237 Cal. App.2d 637, 644, 647 [services as domestic servant and assistant in gasoline station]; Kobus v. San Diego Trust & Sav. Bank (1959) 172 Cal. App.2d 574, 575-576, 579 [342 P.2d 468] [housework]; Palmer v. Phillips (1954) 123 Cal. App.2d 291, 293-295 [266 P.2d 850] [advice in business matters and maintenance of income property]; Chahon v. Schneider (1953) 117 Cal. App.2d 334, 338-339 [256 P.2d 54] [nursing and housekeeping]; Jirschik v. Farmers & Merchants Nat. Bank (1951) 107 Cal. App.2d 405, 406 [237 P.2d 49] [promisee remained in promisor's employ as housekeeper]; Shive v. Barrow, supra, 88 Cal. App.2d 838, 843-844 [money loan, improvement of real property and erection of a building: see discussion (pp. 843-847) of cases dealing with adequacy of legal remedy]; Murdock v. Swanson (1948) 85 Cal. App.2d 380, 382-383 [193 P.2d 81] [providing food and clothing and assisting in ranch operation]; Morrison v. Land (1915) 169 Cal. 580, 583, 586 [147 P.2d 259] [promisee remained in promisor's employ as hotel manager].
[2] E.g.: Riganti v. McElhinney (1967) 248 Cal. App.2d 116, 118-119 (fn. 1), 122 [56 Cal. Rptr. 195] [promisees cared for promisor in old age and maintained his property, but assumed with him a devoted parent-child relationship]; Mutz v. Wallace (1963) 214 Cal. App.2d 100, 102-104, 107, 112 [29 Cal. Rptr. 170] [onerous daily tasks in devotedly caring for alcoholic promisor]; Horstmann v. Sheldon (1962) 202 Cal. App.2d 184, 185-187 [20 Cal. Rptr. 735] [extensive nursing and housekeeping services performed for mother-promisor by daughter]; DeHermosillo v. Morales (1956) 146 Cal. App.2d 819, 821, 823-826, 829 [304 P.2d 854] [nursing and housekeeping services for promisor and her ill husband, promisee treated as daughter]; Monarco v. Lo Greco, supra, 35 Cal.2d 621, 622, 626 [promisee remained in home of mother and stepfather and worked in family farm operation]; Walker v. Calloway (1950) 99 Cal. App.2d 675, 677, 682 [222 P.2d 455] [promisee moved into promisor's home in his last illness and gave him "comfort, care and consolation which he felt only she could give"]; Jones v. Clark (1941) 19 Cal.2d 156, 157-158 [119 P.2d 731] [promisee moved into widowed promisor's home "to furnish her with companionship"]; Fowler v. Hansen (1941) 48 Cal. App.2d 518, 520-523, 525 [120 P.2d 161] [promisee cared for promisor's mother, then promisor herself, in his home: see (p. 523) cases cited and distinguished]; Barry v. Beamer (1908) 8 Cal. App. 200, 201, 202, 205-207, 209-210 [96 P. 373] [promisee "rescued" promisor, her brother, from squalor in his home and cared for him in his last years]; McCabe v. Healy (1902) 138 Cal. 81, 83-84 [70 P. 1008] [promisee moved in with promisor, his uncle, as a small boy, cared for his business, and was treated as a son].