[Civ. No. 8275. First Appellate District, Division One.—April 19, 1932.]

LUCY BROOKS, Appellant, v. IRVING WHITMAN et al., Respondents.

Hugh Martin Young for Appellant.

Fogel & Beman and Henry W. Williams for Respondents.

PARKER, J., *pro tem.*—The case at bar is a suit in equity seeking the specific enforcement of a parol agreement to bequeath and devise made by Walt Whitman, deceased. The parties defendant are the heirs and devisees under the will of said decedent and also the executor of said testament. It might be noted, in passing, that since the institution of the action certain defendants have died and substitution has been made. Preliminary to a statement of the facts, we may discuss generally the nature of actions of this character.

Under the provisions of section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure, any agreement to devise or bequeath property or to make provision for any persons by will must be in writing. However, the courts in the exercise of an equitable jurisdiction have, to some extent, relaxed the rule, to the extent that parol agreements may and will be enforced pursuant to established and well-defined principles of equity jurispru-

dence. (*Wolf* v. *Donahue*, 206 Cal. 213, 220 [273 Pac. 547]; *O'Brien* v. *O'Brien*, 197 Cal. 577 [241 Pac. 861].)

In order that plaintiff might succeed, there were two things she must show. First, that by parol the decedent had agreed to devise or bequeath to her his property; second, that there were present those exceptional facts compelling equitable aid.

The finding of the trial court is as follows: The court finds that it is not true that plaintiff and Walt Whitman entered into an agreement wherein and whereby it was agreed by and between them that if the plaintiff should provide said Walt Whitman with a comfortable home, food and lodging and give him all the care and attention that he required for his comfort and health, the said Whitman would make, execute and publish a will wherein and whereby he would give all of his property to plaintiff, save and except certain specified bequests to others. This finding, while perhaps subject to some criticism as to form, nevertheless is in direct response to the allegations of the complaint, and the finding is made in the exact language of the said complaint. Appellant concedes that if this finding is sustained, the appeal falls.

The evidence before the trial court consisted entirely of that offered by plaintiff. There was testimony to the effect that Walt Whitman was a man of declining years. He had suffered a paralytic stroke and was confined to a hospital in a generally weakened condition, though with no immediate expectancy of death. Plaintiff was a married woman, living with her husband and family. For some years she had known Whitman and had been his friend, and more or less generally interested in his welfare. In the early part of 1925 or thereabouts Whitman, after some months in a hospital, deemed it best to seek private care. Accordingly he was moved to the home of plaintiff, accompanied by a trained nurse. According to the testimony of plaintiff, in the early part of February, 1925, at her home, she held a conversation with Whitman at which time there was present her husband, her son, the nurse, Miss Drake, and, of course, Whitman. In that conversation and at that time and place Whitman said he thought he would like to dismiss the nurse and make some other arrangements. He asked plaintiff if she would be willing to take care of him, realizing that

he was not in a condition to take care of himself, and suggested to plaintiff that she would have to take care of him when the nurse left. He then stated that some arrangements would have to be made for that. Quoting the record *verbatim:* "The Court: Kindly tell what he said and what you said in reply thereto, . . . A. [The plaintiff.] He said, 'I am about to let the nurse go, and we have to make some different arrangements. Will you take care of me? As compensation for taking care of me I will make a will in your favor. Whatever I have when I die is for you. Will that be agreeable to you?' I said, 'Yes, it will.'" This testimony, corroborated by the son and husband, is relied on as establishing the agreement. True, there is other testimony as to the fact that Whitman did make a will (subsequently destroyed) in favor of plaintiff, and also testimony that Whitman had told others after the date of the alleged agreement, that plaintiff was to be the beneficiary under his will and that he had made a will so providing.

■ The making of a will is absolutely no evidence of an agreement to make a will. As was said in *Monsen* v. *Monsen,* 174 Cal. 97, 102 [162 Pac. 90, 92]: "The making of a will has no tendency to show that there is a contractual obligation to make such will." (See, also, *Zellner* v. *Wassman,* 184 Cal. 80, 86 [193 Pac. 84, 87], wherein it is said: "A potential factor in furtherance of fraud would be engendered were a will containing a simple bequest permitted to operate as evidence of a binding contract to make such bequest." And in the same category and for the same reasons would fall statements made by a party as to the fact of his having made a will in favor of one claiming as in the present case. So, therefore, as to the agreement relied upon, we have but the testimony stated.

■ While, as hereinbefore noted, defendants offered no testimony, yet the case of plaintiff contained within itself certain contradictions and defects now to be noted. Plaintiff, her son and husband had testified that at the conversation wherein the agreement was reached, a Miss Drake was present. Miss Drake, called as a witness by plaintiff, denied being present at any such conversation. Miss Drake's testimony was not in the nature of negative testimony, in other words, it was not a case of being present and not recalling such conversation. She denied that she was

present at any time when the subject of Whitman's property was mentioned. Upon cross-examination, the plaintiff admitted that during the period Whitman was in her care, covering some three years and six months, she received compensation at the rate of $100 per month. Payments were made to her weekly in sums of $25 per week. These payments were made by check and at the time each check was delivered to plaintiff there was indorsed on the face of the check these words: "For room, board and care." Plaintiff indorsed each of these checks and received the amounts represented thereby. She explains the notation as meaning room and board and *general* care, as being exclusive of the special care and nursing she was to bestow under the agreement claimed.

On May 18, 1928, and before the filing of the complaint in this action, but subsequent to the death of Whitman, the plaintiff presented to the executor of the estate of said Whitman her verified claim against the estate of said decedent. In this verified claim she itemizes demands for special nursing by herself totaling five days, also a demand for fumigating and cleaning her house and for the replacement of damaged sick-room furniture. Also, she itemizes claims for telephone calls and money advanced for the services of another attendant. The main claims made against the estate by this verified demand read as follows: "July 1, '25 to March 26, '28 Balance due as *per contract* for room, board and special diet for Walt Whitman from July 1, 1925 to and including March 26, 1928 at $50.00 per month. Said contract called for $150.00 per month for said room, board and special diet and receipt is acknowledged of the sum of $100 per month on said contract." Another item of the demand read as follows: "Sept '26 to March 21, '28 Services as practical nurse to Mr. Whitman for 18 months, $4.00 per day—$2160.00." These claims, on their face, show demands covering the period subsequent to the alleged agreement and for practically the same services which plaintiff now claims were to be rendered under the agreement to devise. The claim was rejected and thereafter this suit commenced. Upon being interrogated regarding the filing of this claim, plaintiff stated that she was advised the only way she could get her compensation for services rendered before the date of the alleged agreement

was by putting in a claim, and that she changed her mind and asked for the whole amount which was due. Her testimony then as to the claim was: "That has nothing to do with this case. . . . I am going to use that later."

Another fact developed was that during the time Whitman was supposed to be receiving the so-called supercare, it was frequently necessary for plaintiff to call in assistance, in which cases bills for the services of such attendants were presented to Whitman and paid.

Attention may now be called to the verified complaint of plaintiff herein. She alleges that she and Walt Whitman entered into an agreement wherein and whereby it was agreed by and between· the said parties that if plaintiff should provide said Walt Whitman with a *comfortable home, food and lodging* and give him all the care and attention that he required for his comfort and health, the said Walt Whitman would make and publish his will in her favor, etc. Upon being interrogated as to why she verified a complaint setting up the contract and included general care and attention, the plaintiff's only reply was that it was a mistake. It was in this state of the record that the trial court found against the existence of any agreement to devise. We think the trial court's finding amply supported. We concede the rule that a trial judge may not arbitrarily ignore credible testimony.

From time immemorial it has been the rule of evidence and a rule of law that testimony of oral declarations made by a person since deceased is the' weakest kind of evidence Naturally it follows that it does not require strong evidence to rebut such testimony. Here there was more than sufficient to impeach the witness in almost every detail and her testimony, thus impeached, was entitled to no more weight than the court in its discretion cared to give it. In *Cox* v. *Schnerr,* 172 Cal. 371, at page 379 [156 Pac. 509, 513], the court says: "It is within the province of the trial court to determine what weight and credit shall be given to the testimony of any witness, and this court may not control the conclusion or finding of the superior court denying credence to the testimony unless it appears that there is nothing which at all impairs its accuracy." In *Davis* v. *Judson,* 159 Cal. 121, at page 128 [113 Pac. 147, 150], we find: "The most positive testimony of a witness may be con-

tradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact." It was said in *Wolf* v. *Donahue, supra,* at page 216: "In this class of cases the temptation is strong for those who arc so inclined to fabricate evidence giving color to the claim that a written agreement subsequently lost or destroyed was made by the decedent to dispose of his property at death to the claimant. For this reason the trial court should closely scrutinize the testimony of interested parties who offer themselves to re-establish an alleged lost or destroyed written contract or agreement, lest an irremediable wrong be done to the heirs of a decedent whose lips cannot speak in protest against the consummation of a wicked design." And this language is equally fitting to a case where the issue is as to the existence of a parol agreement to devise.

Without further comment, it is our opinion that the finding of the trial court may not be disturbed. Ordinarily this should dispose of the appeal. However, by way of complete disposition of the questions presented, we may proceed further.

■ If the finding of the trial court above discussed should be upset and the fact found that the oral agreement claimed had actually been shown, nevertheless the plaintiff would be compelled to bring her case within well-recognized principles of equity before she could secure the relief sought. It is conceded that a parol agreement to devise property is invalid, by reason of the statute of frauds, Civil Code, section 1624. It is likewise conceded that, notwithstanding the statute, such a contract may be enforced upon a showing sufficient to arouse the "hosts of equity". We refrain from a detailed analysis of the evidence here presented, but we have gone carefully over the record and find nothing therein that would bring plaintiff within the rule announced.

The contract at best was uncertain and lacked mutuality. There was no showing of performance chargeable to the

terms of the claimed contract, inasmuch as the main part of the service rendered was chargeable to a separate arrangement and the service compensated. There is no showing of any definite change in the situation of plaintiff and there is definite and convincing evidence showing the claimed service to have a value readily compensable in money. (*Monsen* v. *Monsen, supra*, at p. 99; *O'Brien* v. *O'Brien, supra; Christin* v. *Clark*, 36 Cal. App. 714 [173 Pac. 109]; *Baumann* v. *Kusian*, 164 Cal. 582 [44 L. R. A. (N. S.) 756, 129 Pac. 986]; *Kurtz* v. *De Johnson*, 42 Cal. App. 221 [183 Pac. 588].)

In conclusion, we note appellant's complaint on the action of the trial court in granting respondents' motion to strike certain testimony from the record. We have, notwithstanding, considered the entire record and find that, while there may be some ground for appellant's complaint, yet with all of the stricken evidence restored our conclusion would be the same.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.