[Civ. No. 15416. First Dist., Div. One. Apr. 17, 1953.]

MADELAINE CHAHON, Appellant, v. FRANCES SCHNEIDER, Individually and as Executrix etc., Respondent.

Charles E. Greenfield, Jr., and Wallace, Garrison, Norton & Ray for Appellant.

J. C. Flannery and Edward J. Lynch for Respondent.

WOOD (Fred B.), In this action for quasi-specific performance of an oral contract to transfer certain property by will, in consideration of services rendered during the lifetime of the promisor, judgment was rendered against the plaintiff upon the sustaining of a demurrer to the amended complaint without leave further to amend.

The demurrer presented the asserted bar of that clause of the statute of frauds which declares invalid ''An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will,'' unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or by his agent. (Civ. Code, § 1624, subd. 6, and Code Civ. Proc., § 1973, subd. 6.)

 The statute clearly applies. In such a case the person who renders services to another in reliance upon the latter's promise to give him property by will is not without remedy. He has an action against the deceased promisor's estate for the reasonable value of the services rendered. The statute of limitations does not commence to run against such

an action until termination of the services, which usually occurs upon the death of the person sought to be charged. (*Leoni* v. *Delany*, 83 Cal.App.2d 303, 307 [188 P.2d 765, 189 P.2d 517], and cases cited.) But plaintiff herein did not choose to bring such an action.

She brought, instead, this action for quasi-specific performance of the oral contract, to impress a trust in her favor upon the property in the hands of the legatee of the decedent and the administratrix of his estate. The theory is that ''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' (Civ. Code, § 2224.) Plaintiff claims to be ''the person who would otherwise have had it.'' But the oral agreement, by which she might have had this property, is ''invalid'' under the statute of frauds.

Yet, there are circumstances in which the law allows quasi-specific enforcement of such a contract despite the statute; i.e., when the principle of estoppel comes into play. ''The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases, both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]'' (*Monarco* v. *Lo Greco*, 35 Cal.2d 621, 623-624 [220 P.2d 737].) There it appeared that Natale Castiglia and his wife Carmela, when Christie, her son by a former marriage, became 18 and decided to leave home, wanted Christie to stay home and participate in the family venture. ''They made an oral proposal to Christie that if he stayed home and worked they would keep their property in joint tenancy so that it would pass to the survivor who would

leave it to Christie by will except for small devises to John and Rosie. In performance of this agreement Christie remained home and worked diligently in the family venture. He gave up any opportunity for further education or any chance to accumulate property of his own. He received only his room and board and spending money. When he married and suggested the possibility of securing some present interest to support his wife, Natale told him that his wife should move in with the family and that Christie need not worry, for he would receive all the property when Natale and Carmela died. Natale and Carmela placed all of their property in joint tenancy and in 1941 both executed wills leaving all their property to Christie with the exception of small devises to Rosie and John and $500 to plaintiff. Although these wills did not refer to the agreement, their terms were agreed upon by Christie, Natale and Carmela. The venture was successful, so that at the time of Natale's death his and Carmela's interest was worth approximately $100,000. Shortly before his death Natale became dissatisfied with the agreement and determined to leave his half of the joint property to his grandson, the plaintiff. Without informing Christie or Carmela he arranged the necessary conveyance to terminate the joint tenancies and executed a will leaving all of his property to plaintiff." (Pp. 622 and 623.) In such a case, it is clear, Christie would suffer unconscionable injury and Natale and his estate would be unjustly enriched if Natale's devisee were allowed to invoke the statute of frauds. The trial court refused to permit him to do so and the Supreme Court approved that refusal.

The cases in which the principle of estoppel did not apply, said the reviewing court, "have been cases where the court found either that no unconscionable injury would result from refusing to enforce the oral contract [citations], or that the remedy of *quantum meruit* for services rendered was adequate. [Citations.]" (P. 625 of 35 Cal.2d.) "It is settled that neither the remedy of an action at law for damages for breach of contract nor the quasi-contractual remedy for the value of services rendered is adequate for the breach of a contract to leave property by will in exchange for services of a peculiar nature involving the assumption or continuation of a close family relationship. [Citations.]" (P. 626.)

*Did plaintiff herein allege facts which bring into play the principle of estoppel as expounded in the Monarco case?* She did not, as a brief summary of those facts will demonstrate.

Plaintiff alleged: (1) in 1943, she made an agreement with Marcelin Berge, then 60 years of age, to take him into her home and furnish him with board, room, and laundry, for $40 per month. In addition to caring for her nine-room home, taking care of Berge's personal needs and acting as housekeeper in his personal room, plaintiff worked in a laundry and returned from work each noon to prepare Berge's lunch. Berge continued payment of $40 per month and remained in plaintiff's home until July, 1947, when her husband died. Shortly after moving into her home, Berge became demanding, attempted to dictate the menu for guests of plaintiff and her husband, and resented intrusions in plaintiff's home which he came to consider his own.

(2) In 1946 Berge fractured his leg, was hospitalized for about six months, and submitted to extended bone grafts and surgery. He returned to plaintiff's home and went through an additional six months' period of convalescence. During this period plaintiff was required to furnish him with extensive nursing care in addition to room, board, and laundry. Because of the increased burden plaintiff and her husband desired to terminate the relationship, but did not do so, and agreed to continue the relationship, because Berge orally promised plaintiff that if she would continue to care for him until his death he would compensate her in his will, in that he would leave her a certain bank account, which then contained approximately $46,000, and would leave the remainder of his estate, consisting of two other bank accounts, to the defendant. Plaintiff agreed to permit Berge to remain and to care for him and render said services for him upon the terms proposed by him. In making this agreement the parties did not contemplate that the services appellant was to perform were to be compensated by the $40 monthly payments or other pecuniary compensation; that the services were so personal and unusual in character that the parties did not intend they should be compensated on a basis of any specific amount in monthly payments. Pursuant to the agreement, and in reliance upon Berge's promise, plaintiff performed the following services until Berge died: washing, ironing, cooking of special foods, mending, sewing, cleaning and other household tasks; continued nursing care, including massaging his back and legs and helping him to walk about the house; doing all his personal errands outside the house; and taking him along on week-end trips.

(3) Upon the death of her husband in 1947, it was no longer necessary for plaintiff to maintain such a large home and she desired to give up working in the laundry, sell her home and enjoy a more complete social life than was possible while continually remaining at home caring for decedent. For these reasons, in the fall of 1948, she advised decedent he would have to find other quarters. Decedent repeated his promise to will her the bank account, urged her not to sell, and requested her to continue caring for him. In reliance upon these promises appellant was induced to continue caring for decedent until his death, in spite of the fact that his demands increased, in that he refused to give appellant messages left by her friends, discouraged her friends from calling at the house, and attempted to dominate her social and business affairs.

(4) Berge was again hospitalized April 13, 1950, and while at the hospital made a will bequeathing $1,000 to plaintiff and giving all the residue of his assets to the defendant. He died January 19, 1951, without changing that will or making a new one.

It does not appear to us that plaintiff made such a change of position or that the services she rendered were so peculiar that she could not be compensated in terms of money. Recognition of the invalidity of the contract and consequent denial of enforcement of its provisions, would neither unconscionably injure the plaintiff nor unjustly enrich the decedent, his estate, or his legatee, were plaintiff to pursue her legal remedy of recovering from the estate the reasonable value of her services, less such amount as may already have been paid her.

The facts of our case are quite like those in *Jirschik* v. *Farmers & Merch. Nat. Bank,* 107 Cal.App.2d 405 [237 P.2d 49], in which a demurrer to a similar complaint was sustained. There the plaintiff rendered services as a housekeeper and nurse for a person who orally promised to will her $15,000. Said the reviewing court: ''In this case the most that can be drawn from plaintiff's complaint is that while she was employed and paid by decedent she could have secured work at a higher rate of pay, with certain social security and unemployment benefits; and that, relying upon decedent's promise to leave her $15,000 in his will—which promise he did not keep—she stayed with him, did not earn additional money in defense work, and did not secure the social benefits mentioned.

"This does not show unconscionable injury sufficient to estop defendants from interposing the bar of the statute of frauds. Nor does it show unjust enrichment of decedent.

"The complaint does not allege that plaintiff was paid less than the reasonable value of her services. And if the wages paid plaintiff had been less than they were reasonably worth, an action in quantum meruit for the difference would prevent any unjust enrichment of decedent, or of his estate. (*Monarco* v. *Lo Greco, supra*; *Ruinello* v. *Murray, supra* [36 Cal.2d 687 (227 P.2d 251)].)" (Pp. 406-407. A petition for a hearing by the Supreme Court was denied.)

In *Tompkins* v. *Hoge*, 114 Cal.App.2d 257 [250 P.2d 174], one of the grounds of decision was that equity denies relief when the services are compensable in damages or in *quantum meruit*. "Plaintiff here alleged she gave up a salary of $2,500 per year and that she could have retired as a school teacher upon a pension of about $50 per month when she had attained the age of 70 years, or in 1947, and that defendant was aware of that fact. The detriment suffered by plaintiff in resigning her position, with respect both to loss of salary and pension rights, would have been proper elements of damage in an action to recover for the value of plaintiff's services. The fact that plaintiff gave up association with friends and relatives in New York was comparable to the neglect of marital, social and household duties and absence from her home and husband, alleged by the plaintiff in the Murdock case. There was no finding that by reason of the facts found plaintiff suffered detriment in coming into the home of defendant that could not be compensated for in money. We think such a finding would have had no basis in the evidence. Anyone who goes into the home of another, there to reside permanently, gives up associations and ways of life for others that may turn out to be less desirable. Inability to be restored to the former status is not a good ground for equitable relief unless to deny it would operate as a fraud upon the party seeking relief. This is not such a case and was not considered by the trial court to be one. Such detriment as plaintiff suffered was compensable in damages and her claim therefor was one to be prosecuted at law and not in equity. (See *Zaring* v. *Brown, supra*, 41 Cal.App.2d 227 [106 P.2d 224].)" (P. 315.)

In *Murdock* v. *Swanson*, 85 Cal.App.2d 380 [193 P.2d 81], a demurrer to the complaint was sustained. The first cause of action alleged that "in September, 1941, the plaintiff and the decedent, who was then 74 years of age, entered into an

oral agreement whereby it was agreed that the plaintiff would care for the decedent, render personal services to her and furnish her with certain goods during the remainder of her lifetime; that she would assist her in caring for her property to the extent that might be necessary to preserve the property and prevent its sale; and that, if necessary, she would care for the decedent in her own home or in plaintiff's home to the end that she should not be sent to an institution. It is then alleged that in consideration of all these things the decedent agreed to make and leave at her death a will leaving her ranch and all her other real and personal property to the plaintiff; and that, in making this agreement, both parties understood and agreed that the things to be done by the plaintiff would not be susceptible of pecuniary compensation and that it would be impossible to compensate plaintiff except in the manner agreed upon.

"It is then alleged that in September, 1941, the plaintiff commenced to fulfill her part of this agreement; that she made trips from her home to the home of decedent, a distance of many miles, on the average of twice a day; that she performed various personal services for the decedent and worked on her ranch; that she furnished laborers from time to time to construct fences and do other work on the ranch; that she furnished decedent with food, clothing, drugs and medicine and other articles, including a milk cow and other animals for her ranch; that she acted as sole companion to the decedent; and that these various services continued until the decedent died. It is further alleged that until 1945, the plaintiff owned and operated a beauty shop; that in 1945, it became necessary to spend so much time with the decedent that she found it impossible to continue to operate her business; and that in order to comply with her agreement and devote her time to the decedent she then sold her business at a great loss with respect to the good will and future profit; that during the last three years the plaintiff was married and living with her husband several miles from decedent's home; and that her carrying out of this agreement caused her to neglect many of her marital, social and household duties and to remain away from her home and husband for many hours at a time.

"It is then alleged that the plaintiff has received no compensation for these services, performed in reliance on the agreement; that because of her reliance upon the agreement she kept no record of the things she did for the decedent and

by reason thereof it would be difficult for her to render an exact statement of all her services or of all of the things furnished to the decedent; that the decedent left no will; that the services and things so furnished by her are not susceptible of pecuniary compensation or measurement; that she has so changed her status, mode of living and financial position in reliance on the agreement that it would be impossible to compensate her unless the agreement is specifically enforced; and that the failure of the decedent to make such a will will be a fraud on the plaintiff unless the court impresses a trust on the property of the estate for her benefit." (Pp. 382 and 383.) In affirming the judgment, the appellate court said in part: "There is no merit in the further contention that the services rendered by the appellant were not susceptible of pecuniary compensation and that, as alleged, this situation was recognized and agreed upon by the parties to the oral agreement. The allegation to that effect is merely a conclusion and the facts alleged clearly show that they were all personal services and articles furnished, and that they are not of so extraordinary or exceptional character 'as in contemplation of law, cannot be compensated for in money.' (*Morrison* v. *Land*, 169 Cal. 580 [147 P. 259].)'" (P. 385.) In respect to the sale of the beauty parlor the reviewing court, while observing there was no allegation that such sale was requested by or known to the deceased promisor, also significantly observed that if any loss occurred in respect to that sale it "was an element which could have been included in showing the value of the services she rendered, and a remedy at law existed. No such change of position here appears as to make it impossible for plaintiff to obtain compensation for anything she did other than through equitable relief, or upon the constructive trust theory as it has always been applied." (P. 385.)

In *De Mattos* v. *McGovern,* 25 Cal.App.2d 429 [77 P.2d 522], likewise, a demurrer to the complaint was sustained. It was alleged that the deceased promisor had been engaged in the ownership and control of a mercantile business and that plaintiff was actively employed by the deceased in the conduct of that business; also, that "for the purpose of inducing plaintiff to continue in his said employment, the deceased promised him that he would bequeath to him by will an amount equal to one-third of all his property, and that he had actually executed a will to that purpose. It is alleged that the compensation paid to the plaintiff for his services was grossly inadequate, and that he remained in the employ of the

deceased because of and in reliance upon said promise and representation above noted." (P. 431.) The remedy at law was deemed adequate.

The significance of the Jirschik and Tompkins decisions is that they were rendered subsequent to the rendition of the decision in the Monarco case, and in each the Supreme Court denied a hearing. The Murdock and De Mattos cases are of special significance because they were cited with approval in the Monarco case as holding "that the remedy of *quantum meruit* for services rendered was adequate." (P. 625 of 35 Cal.2d.)

*Ruinello* v. *Murray*, 36 Cal.2d 687 [227 P.2d 251] lends added support to the view that plaintiff has not alleged facts which estop the defendant from relying upon the statute of frauds. In the Ruinello case a demurrer was sustained to a complaint which alleged an oral agreement "whereby in consideration of plaintiff's giving up a 'permanent life-time position' with another employer as engineer and superintendent of the 834 South Broadway Building and taking a similar position with defendant, the owner of the Ninth and Broadway Building in Los Angeles, for the term of five years, defendant would pay plaintiff a monthly salary of $350 plus a yearly bonus of 20 per cent of the gross income in excess of $114,000; that plaintiff had been continuously employed as engineer and superintendent of the 834 South Broadway Building since its erection in 1926 until October, 1945, when he resigned to enter the employ of defendant; that plaintiff was personally acquainted with defendant for 20 years and had been previously employed by defendant's deceased husband and by defendant, who were lessees of 834 South Broadway Building from 1933 to 1943; that plaintiff was employed by defendant from December 1, 1945, to February 21, 1948, when defendant summarily discharged him to avoid payment of the bonus; that during the period plaintiff worked for defendant he was able to increase the annual gross income of the building to approximately $263,000. Plaintiff seeks recovery of $11,050, the sum he would have been entitled to receive as salary during the remainder of the employment agreement. He also prays for an accounting of the gross profits and for judgment for 20 per cent of the yearly gross profits in excess of $114,000." (Pp. 688-689.) The Supreme Court held that these facts failed to show that plaintiff would suffer unconscionable injury or that defendant would be unjustly enriched if the oral contract were not enforced.

It was not enough to allege that he gave up existing employment to work for the defendant, "he must set forth his rights under the contract given up and show that they were so valuable that unconscionable injury would result from refusing to enforce the oral contract with defendant." (P. 689.) He also failed to allege facts showing that the employment which he gave up was not terminable at the will of either party. The leaving of such employment for employment likewise terminable at will because of the statute of frauds "does not result in unconscionable injury." (P. 690.) The failure to allege that the reasonable value of plaintiff's services was greater than the $350 a month he was paid while working for the defendant indicates that no unjust enrichment would result. If the salary received was less than the reasonable value of the services, "an action in *quantum meruit* for that value would prevent any unjust enrichment of the defendant." (P. 690.)

In addition to the Monarco case, plaintiff relies upon *Walker* v. *Calloway,* 99 Cal.App.2d 675 [222 P.2d 455]; *Fowler* v. *Hansen,* 48 Cal.App.2d 518 [120 P.2d 161]; and *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198]. In each of these, as in the Monarco case, the facts were such that failure to enforce the contract would result in the accomplishment of a fraud. In the Notten case, a husband and wife executed reciprocal wills pursuant to an oral agreement that upon the death of either all of their property should go to the survivor, who upon death would in turn leave it to certain relatives including plaintiffs. The fraud consisted in the acceptance of benefits by the wife under the provisions of the husband's will plus the subsequent revocation of her will in violation of the oral agreement. As stated by the court: "It is our opinion that when two parties execute reciprocal wills pursuant to an oral agreement, and one of the parties dies before either will is revoked, and the other party accepts the benefit of the decedent's will, and then revokes, a constructive fraud sufficient to raise the estoppel has been practiced on the first decedent and on the beneficiaries of the oral agreement." (P. 474.) In the Walker case, plaintiff, in reliance upon the decedent's promise to leave her all his property at death, abandoned her occupation, residence and social ties in Michigan, came to California where the decedent resided, and gave him her companionship and affection until his death. Moreover, the defendant in that case fraudulently procured decedent to change the will he had previously made pursuant

to the oral agreement with plaintiff, and substitute a new will leaving the estate to defendant. In the Fowler case the plaintiff and his wife moved from Texas to California and furnished a home, affection, and care for the decedent's mother in reliance upon decedent's promise to leave one-half of her property to the plaintiff and his wife.

An additional reason why equity should not intervene is furnished by the decisions in *Morrison* v. *Land,* 169 Cal. 580 [147 P. 259], and *Zellner* v. *Wassman,* 184 Cal. 80, 82 [193 P. 84]. In the Morrison case the plaintiff alleged that the deceased promisor had agreed to bequeath to plaintiff $50,000; in the Zellner case, $5,000. In each case the Supreme Court deemed the legal remedy completely adequate, expressed in the Zellner case in these words: "Since plaintiff relies upon an alleged contract to beqeath a specified sum of money, the case falls within the decision of this court in *Morrison* v. *Land,* 169 Cal. 580 [147 P. 259], where it was said: 'An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint—afford him full and adequate relief. In such an action, the measure of damages would have been the value of the property agreed to be bequeathed, for that was the amount in which he was damaged by the breach. (See 40 Cyc. 1073.) Attorneys for respondents pertinently ask, "Is a decree in equity ordering payment of a sum of money from the estate to plaintiff any more perfect and complete justice to him than a common-law judgment in his favor and against the estate for a like sum?" A clearer case of adequacy of remedy at law could not be made than that presented here. The situation is such as to absolutely preclude resort to equity.' " (P. 84 of 184 Cal.) It happened that the oral agreement in the Morrison case was made before and that in the Zellner case after the amendment of the statute of frauds which declares invalid an oral agreement to leave property by will. The argument was advanced in the Zellner case that in view of the statute of frauds, there could be no remedy at law for damages for breach of the agreement, hence that the legal remedy could not possibly be adequate. The answer to that is that "Where the administration of law and equity has been merged in one court, this doctrine of equitable estoppel is not confined to suits in equity, but is equally available in an action at law. (5 Browne on Statute of Frauds, p. 575; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154].) Therefore, a plaintiff's

claims to an equitable estoppel will be considered in determining whether or not his cause of action is barred by the statute of frauds, whether the action be at law upon the contract or an equitable action seeking specific performance.'' (P. 85 of 184 Cal.) In our case the decedent's promise, as alleged, was to bequeath the plaintiff a certain bank account. Damages for the breach of that agreement would be measured by the amount of money in that particular bank account at the time of the promisor's death. That would be a definite sum of money, just as definite as the $50,000 in the Morrison case and the $5,000 in the Zellner case.

In an action at law for damages or for *quantum meruit,* the plaintiff is a creditor and must file his claim against the estate of the deceased promisor or be forever barred. A complaint which does not allege such a filing fails to state a cause of action. (*Morrison* v. *Land,* 169 Cal. 580, 585 [147 P. 259]; *De Mattos* v. *McGovern, supra,* 25 Cal.App.2d 429, 433.) In the instant case, even if the complaint had stated facts sufficient to constitute a cause of action at law for damages (which it does not) it would still be insufficient because it does not allege that plaintiff presented a claim for damages or for *quantum meruit* against the estate of the deceased.

The judgment appealed from is affirmed.

Bray, J., concurred.

PETERS, P. J.—I concur.

I do so with some reluctance. It is my belief that, under the facts alleged, the question of whether or not there was an estoppel should be decided as a question of fact and not one of law upon a demurrer. If the question were an open one, I would vote for a reversal. But the question is not an open one. The cases of *Jirschik* v. *Farmers & Merch. Nat. Bank,* 107 Cal.App.2d 405 [237 P.2d 49]; *Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81]; *De Mattos* v. *McGovern,* 25 Cal.App.2d 429 [77 P.2d 522]; *Ruinello* v. *Murray,* 36 Cal.2d 687 [227 P.2d 251], and others, all cited in the majority opinion, on facts stronger than those here alleged, held that, as a matter of law, no estoppel existed. As a judge of an intermediate court I feel bound by those decisions. In my opinion, the whole problem needs reconsideration by the Supreme Court.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1953.