[Civ. No. 500. Fifth Dist. Oct. 22, 1965.]

LuJEAN KENNEDY, Plaintiff and Appellant, v. BANK OF AMERICA, as Executor, etc., Defendant and Respondent.

Colley & McGhee and Nathaniel S. Colley for Plaintiff and Appellant.

Frederick E. Hoar for Defendant and Respondent.

BROWN (R. M.), J.—This appeal originated in an action brought by the plaintiff against the Bank of America National Trust & Savings Association, as executor of the will of Thomas J. McDermott, deceased (hereinafter referred to as executor), and the devisees and legatees under such will (hereinafter referred to as real parties in interest). The second amended complaint contained two causes of action. The first cause of action sought quasi-specific performance of an alleged oral contract between the plaintiff and the decedent, by which the decedent agreed to devise and bequeath his property to the plaintiff by his will as compensation for personal services rendered and to impose a constructive trust upon the property. The second cause of action sought the reasonable value of the services allegedly rendered by the plaintiff to the decedent during his lifetime. The executor interposed a general and special demurrer. By a minute order dated October 26, 1964, the demurrer to the first cause of action was sus-

tained without leave to amend, and a judgment of dismissal as to that cause was entered on November 4, 1964. As to the second cause of action plaintiff was given leave to amend. A third amended complaint, containing a single cause, was filed. The executor interposed a general and special demurrer which was again sustained with leave to amend. Plaintiff declined to amend further and a judgment of dismissal as to that cause was entered on January 5, 1965. Plaintiff filed a notice of appeal from both judgments of dismissal on January 5, 1965.

## *Appealability*

The executor raises the question of whether or not the appeal from the judgment of dismissal entered on November 4, 1964, is timely, more than 60 days having elapsed between its entry and the filing of the notice of appeal. In order to properly determine the question of appealability of that judgment, the state of the pleadings at the time it was made must be borne in mind. That judgment removes from the case the first cause of action predicated upon the theory of quasi-specific performance of a promise to make a will. ▮ In such an action the executor is a proper party and may be joined as a defendant (*Ludwicki* v. *Guerin*, 57 Cal.2d 127, 130-132 [17 Cal.Rptr. 823, 367 P.2d 415]); and those who will take under the will or by intestacy are the real parties in interest and are indispensable parties defendant in the action (*Pluth* v. *Smith*, 205 Cal.App.2d 818, 829-830 [23 Cal.Rptr. 550]). ▮ So far as is disclosed by the record, the real parties in interest have never appeared in the action by demurrer or otherwise. Only the demurrer of the executor was before the trial court. The minute order filed after the hearing on demurrer recites in relevant part: "General and Special Demurrer of Bank of America, as Executor, to the Second Amended Complaint. Ruling as follows: Demurrer to the Second Amended Complaint is sustained as to paragraphs I, III and sub-paragraphs (1), (2), (5) and (7) of paragraph IV thereof. As to the First Cause of Action, Demurrer is sustained without leave to amend for the reasons stated therein. . . ."

Although it clearly appears that the court limited its ruling to the demurrer of the executor, nevertheless the executor caused a formal judgment of dismissal to be signed and filed in which it is ordered: "IT IS HEREBY ORDERED that the first cause of action set forth in said second amended complaint on file in said action be, and the same is hereby, dismissed."

Upon its face the judgment terminates the action as to the real parties in interest and, if properly made, is clearly a final judgment as to them (*Shepardson* v. *McLellan,* 59 Cal.2d 83, 86 [27 Cal.Rptr. 884, 378 P.2d 108]). But it was not properly made. Since the only vehicle before the trial court upon which it could act was the demurrer of the executor, the judgment of dismissal exceeds the scope of the court's ruling thereon insofar as it purports to flatly dismiss the first cause of action as to the nondemurring defendants. It must, therefore, be construed as a judgment dismissing the first cause as to the demurring executor alone. As so construed it was not an appealable order. The executor was a proper party defendant in both causes of action. Under the final judgment rule it has been held that when several counts are involved between the same parties, there cannot be a piecemeal disposition on each count, with a separate judgment and right of appeal each time one is disposed of; all of the errors of which complaint is made must be reviewed on a single appeal from the final judgment. (*Western Electroplating Co.* v. *Henness,* 172 Cal.App.2d 278, 282 [341 P.2d 718].) There is a comprehensive discussion of the problem in *Gombos* v. *Ashe,* 158 Cal.App.2d 517 [322 P.2d 933]. In that case a husband and wife brought an action for damages arising from an automobile accident. The complaint was in three counts; the first two causes of action were predicated on charges of negligence and sought compensatory damages and the third cause of action sought punitive damages based on allegations that the defendant was intoxicated. A demurrer was sustained to the third cause of action and a judgment of dismissal was entered. Trial was had on the first two causes of action resulting in a plaintiff's verdict and the judgment entered thereon was satisfied. The plaintiff appealed from the judgment of dismissal as to the third cause, and the defendant moved to dismiss. At page 522, the reviewing court discusses this matter, stating: "In *Bank of America* v. *Superior Court,* 20 Cal. 2d 697, 701 [128 P.2d 357], the court stated:

" 'These arguments are all predicated upon a fundamental fallacy. They assume that there can be a piecemeal disposition of the several counts of a complaint. They assume, when there is more than one count in a complaint, and a demurrer is interposed and sustained, and a judgment of dismissal entered, that there are as many separate judgments as there are counts in the complaint. That is not the law. There cannot be a separate judgment as to one count in a complaint containing several counts. On the contrary, there can be but one judg-

ment in an action no matter how many counts the complaint contains. [Citations.]' The court then quoted from a number of opinions and concluded the discussion on the point (at p. 702) by quoting from *Potvin* v. *Pacific Greyhound Lines Inc.*, 130 Cal.App. 510, 512 [20 P.2d 129], as follows:

" ' "Since a final judgment in an action contemplates a complete adjudication of the rights· of the parties and a final determination of the matter in controversy, it is apparent that the so-called judgment rendered upon the sustaining of a demurrer to one cause of action of a complaint without leave to amend, leaving five other causes of action unimpaired presenting matters to be litigated during a trial of the issues of fact, cannot be regarded as a final determination and disposal of the cause." ' '

"The same result has been reached in many other cases. (See *Daniels* v. *Daniels*, 136 Cal.App.2d 224 [288 P.2d 910]; *Kennedy* v. *Kennedy*, 130 Cal.App.2d 785 [279 P.2d 759]; *Murphy* v. *Fong Shuck*, 151 Cal.App.2d 64 [311 P.2d 80].)"

The rule of *Gombos* was followed by the Supreme Court in *Shepardson* v. *McLellan, supra,* 59 Cal.2d 83.

Borrowing the reasoning of the Supreme Court in the last cited case and paraphrasing its language to conform to our facts, we summarize as follows: The judgment of dismissal of the first cause of action entered on November 4, 1964, was not a final judgment insofar as the executor was concerned since the litigation proceeded as to it on the second cause of action. That judgment of dismissal should not have been entered. The judgment of dismissal as to the third amended complaint, which restated the allegations of the original second cause of action, entered on January 5, 1965, was also not a final judgment because it did not dispose of the first cause of action. Thus, there never has been entered a final judgment. But "in the interests of justice and to prevent unnecessary delay" (*Gombos* v. *Ashe, supra,* 158 Cal.App.2d 517, 524), we may order, on our own motion, that the second judgment of dismissal be amended by adding a paragraph dismissing the first cause of action as to the executor, and that the premature notice of appeal be treated as a notice of appeal from the judgment dismissing both causes of action as to the executor. (*Shepardson* v. *McLellan, supra,* at p. 88.)

### Quasi-Specific Performance Cause of Action

The first cause of action set forth in the second amended complaint alleges that the plaintiff rendered serv-

ices as a domestic servant and as an assistant in the decedent's business from May 1, 1941, until June 15, 1953, at which time the decedent advised the plaintiff that he was retiring from business and would no longer need her services; that the plaintiff received no compensation for her services; that the decedent promised to compensate her by executing an irrevocable will in her favor; that on November 2, 1943, the decedent executed a holographic will naming the plaintiff as sole beneficiary, which will is pleaded in *haec verba*; that on March 1, 1944, the decedent executed a formal will naming the plaintiff as sole beneficiary, which latter will is attached as an exhibit to the complaint; that the decedent reiterated his promise at the time of delivering each of the two wills to the plaintiff that the will would be irrevocable; that on September 6, 1961, the decedent executed another will in which plaintiff was not named as a beneficiary; that the decedent died on October 31, 1963, leaving an estate valued at $85,000; and that Bank of America was duly appointed executor of his last will and testament. It is alleged, upon information and belief, that at the time of the claimed oral agreement on May 1, 1943, the decedent was married and living with his wife; that the wife agreed to the terms of the agreement between plaintiff and the decedent; and that the wife predeceased the decedent leaving no will.

The allegations of the complaint upon which the plaintiff's case must stand or fall are these: that on or about May 1, 1941, the decedent offered to employ the plaintiff in his home as a domestic servant and as an assistant in his retail gasoline station business, and orally promised that, if she would perform services for him and his family and would remain at Bakersfield and would assist him in building up his business, he would execute an irrevocable will leaving her his entire estate; that prior to May 1, 1941, the plaintiff was a healthy woman and used her time to care for her own household and to earn money working at various tasks; that the plaintiff accepted the offer of employment and worked for the decedent substantially all of the time from May 1, 1941, until about June 15, 1953, at which time the decedent orally informed her that he was retiring from business and that he would no longer need her services, but that a will theretofore made by him in her favor would remain irrevocable. It is then alleged:

"That in order to fulfill her portion of said oral agreement between the parties that she would perform services as indicated, plaintiff gave up most of her own social life, and gave

up opportunities to move to other cities with her husband, and gave up her opportunities to work for other persons so as to assist her husband in accumulating savings and property of their own, and in general, plaintiff, in reliance upon the oral agreement of said decedent to leave all of his property to her by will upon his death, put aside most of her personal pleasures, comforts and affairs, and forsook many of her friends while she was performing services as housekeeper and assistant to decedent in his business.

''That in doing all of the things aforesaid plaintiff was acting in reliance upon the promise of said decedent to make her beneficiary of his will, and upon his promise that he would not change said will, and had it not been for such oral promises plaintiff would not have performed said services without receiving compensation therefor, which plaintiff did not receive, and were it not for said promises plaintiff would not have altered her way of life in the manner in which she did.

''. . . . . . . . . . . . . . . . . . . .

''That the nature of the services and contributions of plaintiff was that compensation therefore may not be measured, nor would compensation for services rendered be fair and reasonable under the circumstances; nor was it the intent of the parties that compensation be measured except by the total value of decedent's estate; that plaintiff has no adequate or speedy remedy at law.''

The executor filed a general demurrer on the ground that the alleged contract is oral and unenforceable under section 1624, subdivision 6, of the Civil Code, and section 1973, subdivision 6, of the Code of Civil Procedure, commonly referred to as the statute of frauds, and a special demurrer on the grounds that the first cause of action is uncertain, ambiguous and unintelligible in several specified particulars. The demurrer was sustained without leave to amend ''for the reasons stated therein.'' The principal concern on this appeal is whether the plaintiff has pleaded facts sufficient to overcome the bar of the statute of frauds.

The general rules governing an appeal from a judgment of dismissal after a demurrer has been sustained without leave to amend are set out in *Division of Labor Law Enforcement* v. *Barnes,* 205 Cal.App.2d 337, at page 346 [23 Cal.Rptr. 55], as follows: ''A demurrer admits the truth of all allegations which are well pleaded [citation], but does not admit contentions, conclusions or deductions drawn by the pleader

from facts alleged, nor does it admit allegations of conclusions of law [citation]. It must be assumed that appellants can prove all well-pleaded facts as alleged. [Citation.] All that is necessary as against a general demurrer is to plead facts entitling the pleader to some relief.''

The elements requisite to stating a cause of action for quasi-specific performance of an oral contract such as that here involved are well laid out in *Walker* v. *Calloway*, 99 Cal.App.2d 675, at page 681 [222 P.2d 455], where it is said: ''To enforce an oral contract to bequeath or devise property in equity by quasi-specific performance, it must be shown that the contract is definite and certain, the consideration adequate, that the contract is founded on good morals and not against public policy, that the character of the services is such that a money payment would not furnish adequate compensation to the plaintiff, that there is such a change in the plaintiff's condition and relations in reliance on the contract that a refusal to complete the contract would be a fraud upon him, and that the remedy asked for is not harsh, oppressive or unjust to innocent third parties.''

The doctrine of estoppel which lifts an agreement to make a provision by will out of the operation of the statute of frauds is said to be based on either of two grounds. It has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a detrimental change of position in reliance upon the oral agreement. It has also been applied where unjust enrichment would result if the party who has received the benefits of the performance of the other were allowed to invoke the statute. (*Day* v. *Greene*, 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; see also a comprehensive discussion of the conflicting California theories in *Thompson* v. *Beskeen*, 223 Cal.App.2d 292 [35 Cal.Rptr. 676].) The plaintiff in this case has not pleaded facts sufficient to allege either ground. Courts have found a detrimental change of position where there is a family relationship or close friendship, and the decedent has turned to the plaintiff for care, solace, comfort and companionship. Ofttimes, at the decedent's supplication, the plaintiff has moved from an established home, leaving an established position or business in his or her hometown or state, to make a residence in the home of the decedent far from friends and family, and devoting himself or herself with dedicated care to the needs of the decedent, sometimes until the death of the decedent. In speak-

ing of the nature of the services which will merit relief in equity, the court, in *Walker* v. *Calloway, supra,* 99 Cal.App.2d 675, at page 680, stated: "Where the services rendered by plaintiff consisted in nursing and caring for a person enfeebled and suffering from a horrible disease, requiring constant and unceasing watchfulness, harrowing to the mind, destructive to the peace and comfort of the one performing the services, and possibly injurious to the health, it has been held that it is impossible to estimate their value by any pecuniary standard; and where it is evident that decedent did not intend so to measure them, it is out of the power of any court, after the performance of such services, to restore the plaintiff to the situation in which he was before the contract was made or to compensate him therefor in damages."

In that case the decedent induced the plaintiff, his former wife, to move from her home in Michigan, where she was employed, to his home in California, there to render care throughout a terminal illness by reason of cancer, and to give him her companionship and affection and solace his remaining days. She did so and cared for him until his death. A judgment of dismissal after demurrer was sustained without leave to amend was reversed. Almost all of the cases speak in terms of "peculiar," "extraordinary," or "unique" services, for which the law cannot compensate in money. (*Morrison* v. *Land,* 169 Cal. 580, 586-587 [147 P. 259]; *DeHermosillo* v. *Morales,* 146 Cal.App.2d 819, 827-828 [304 P.2d 854]; *Chahon* v. *Schneider,* 117 Cal.App.2d 334, 339 [256 P.2d 54]; *Palmer* v. *Phillips,* 123 Cal.App.2d 291, 295 [266 P.2d 850].)

The complaint in this case does not catalogue the services which it is claimed the plaintiff rendered to the decedent. Since it is a second amended complaint and the lack was called to the attention of the plaintiff in prior demurrers, it must be assumed that the best description of the nature of the services which the plaintiff can make is that she acted as a domestic servant and as an assistant in the retail gasoline station business operated by the decedent. The services of both a domestic servant and a gasoline station assistant may be adequately compensated for in money. Such services are neither peculiar, nor exceptional, nor unique. To the contrary, they are exceptionally ordinary. They are performed for wages by thousands of employees similarly situated. It is not alleged that the plaintiff made her home with the decedent; or that she occupied a close or continuing familial relationship with him; or that she attended to his personal

needs; or that she nursed him through any illness; or that she did anything which was "harrowing to the mind" or "destructive to the peace and comfort" of the plaintiff, or "injurious to her health" for which money cannot compensate. The allegation in the complaint that the nature of the services was such that compensation therefor may not be measured is a mere conclusion. (*Walker* v. *Calloway, supra,* 99 Cal. App.2d 675.)

The allegations that she gave up her social life, gave up opportunities to move to other cities and to work for other persons; that she gave up opportunities to assist her husband in accumulating savings and property of their own; that she put aside most of her personal pleasures and forsook many of her friends are not sufficient. In *Tompkins* v. *Hoge,* 114 Cal.App.2d 257 [250 P.2d 174], the plaintiff's allegations that she gave up a salary of $2,500 per year as a school teacher, together with pension rights, and that she gave up association with friends and relatives in New York, were held to be insufficient. Said the court at page 266: "Anyone who goes into the home of another, there to reside permanently, gives up associations and ways of life for others that may turn out to be less desirable. Inability to be restored to the former status is not a good ground for equitable relief unless to deny it would operate as a fraud upon the party seeking relief."

In *Murdock* v. *Swanson,* 85 Cal.App.2d 380 [193 P.2d 81], the plaintiff alleged in part that in order to perform services to the decedent she sold her beauty shop business and its good will at a loss; and that her carrying out of the agreement "caused her to neglect many of her marital, social and household duties and to remain away from her home and husband for many hours at a time." With respect to these allegations the reviewing court pointed out that there was no allegation that the sale was requested by or even known to the decedent, and observed that the loss, if any, "was an element which could have been included in showing the value of the services she rendered, and a remedy at law existed." (P. 385.) It was held that the complaint failed to allege a detrimental change of position sufficient to entitle the plaintiff to equitable relief, and the sustaining of a demurrer without leave to amend was upheld.

In all of the cases above cited, the complaints alleged facts stronger than in the present case. Here there was no uprooting from an established home, no move to a new area, no abandonment of a going business owned by the plaintiff, no

sacrifice of specified better opportunities, no taking of the decedent into the plaintiff's own home, no move of the plaintiff into the home of the decedent, no family relationship or close tie, no relationship more than master and servant, no change of an existing mode of life other than as is pleaded by general conclusions; in short, a showing far less persuasive than in any other case which has been cited to the court or developed through independent research, where relief sought was denied. (See *Palmer* v. *Phillips, supra,* 123 Cal.App.2d 291, 297.)

Nor does the complaint allege sufficient facts to show that the decedent or the beneficiaries under his will will be unjustly enriched if the purported oral contract is not enforced. There are no allegations that services rendered to the decedent, either in his household as a domestic servant or in his service station business, substantially contributed to the value of the business or to the assets which comprise the estate of the decedent. No unjust enrichment results, or may be implied, from mere allegations that the plaintiff performed services of an impersonal nature for the decedent.

One further matter must be noted. The complaint alleges, with reference to the holographic will executed by the decedent in favor of the plaintiff on November 2, 1943, that it was delivered to the plaintiff by the decedent "as a written memorandum and evidence" of the oral agreement. In *Kobus* v. *San Diego Trust & Sav. Bank,* 172 Cal.App.2d 574, at pages 579-580 [342 P.2d 468], it was held that where the will does not contain a reference to the oral agreement it does not constitute a sufficient memorandum to comply with the requirements of the statute of frauds. In our case neither the holographic will nor the formal will refers to the claimed oral agreement. To the same effect see *Baker* v. *Bouchard,* 122 Cal.App. 708 [10 P.2d 468] ; *Notten* v. *Mensing,* 3 Cal.2d 469 [45 P.2d 198] ; *Zaring* v. *Brown,* 41 Cal.App.2d 227 [106 P.2d 224] ; *Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84], and *Brooks* v. *Whitman,* 122 Cal.App. 660 [10 P.2d 1007]. In *Luders* v. *Security Trust & Sav. Bank,* 121 Cal.App. 408 [9 P.2d 271], the decedent executed a will in which she bequeathed her property to the plaintiff "for her faithful service to me," and which will was subsequently revoked. Plaintiff sued to impress a trust upon the property and contended that the will was a sufficient note or memorandum in writing, which took the case out of the statute of frauds. The appellate court rejected the argument, saying at page 413:

"The will which deceased executed in 1923 did not 'contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties' as required in the case of *Zellner* v. *Wassman, supra,* and was not a sufficient note or memorandum of the contract to bring this case without the provisions of the statute of frauds.''

We conclude that the first cause of action set out in the second amended complaint does not state a cause of action in that it does not allege facts sufficient to lift it outside the statute of frauds. We further conclude that the court did not abuse its discretion in sustaining the demurrer without leave to amend because plaintiff had, in the first complaint and in the first amended complaint, attempted to state a cause of action without success. Three opportunities should suffice. (*Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251]; *Taliaferro* v. *Wampler,* 127 Cal.App.2d 306, 310 [273 P.2d 829]; *Whittemore* v. *Davis,* 112 Cal.App. 702, 708 [297 P. 640].)

By way of special demurrer, the executor attacks specific portions of the first cause of action in the second amended complaint on the grounds that it is uncertain, ambiguous and unintelligible. The demurrer was properly sustained for failure to state a cause of action, and the charges of uncertainty become immaterial.

### The Quantum Meruit Cause of Action

By a third amended complaint, the plaintiff restated the cause of action in which she sought the reasonable value of the services claimed to have been rendered to the decedent from May 1, 1941, to about June 15, 1953. She left untouched the caption and the prayer, both of which were applicable when the prior second amended complaint contained both causes of action. Thus the caption names the real parties in interest, as well as the executor, as parties defendant; it is entitled as a complaint for quasi-specific performance as well as for the reasonable value of services rendered and it prays for quasi-specific performance of the oral agreement, for the imposition of a constructive trust upon the assets of the estate, or, in the alternative, the sum of $66,150 as the reasonable value of her services.

By a general and special demurrer the executor raised the bar of the two-year statute of limitations embodied in section 339, subdivision 1, of the Code of Civil Procedure; that there

is a misjoinder of parties defendant because the names of the real parties in interest still appear in the title; that the complaint is uncertain in that the creditor's claim alleged to have been presented and rejected is not pleaded in *haec verba* or according to its legal effect, that it cannot be ascertained whether the claim was verified by the plaintiff or supported by the claimant's affidavit as required by section 705 of the Probate Code. The demurrer was sustained upon all grounds.

Neither party cites a case in point on the question of whether or not the two-year statute of limitations commenced to run upon the termination of the services on or about June 15, 1953, or upon the date of death. Appellant places her sole reliance upon a statement contained in *Leoni* v. *Delany*, 83 Cal.App.2d 303, at page 307 [188 P.2d 765, 189 P.2d 517], that: " 'It is the settled law of this state that when continuous personal services are performed under an express agreement for compensation upon termination thereof, which agreement is unenforceable because not in writing (Code Civ. Proc., § 1624; Civ. Code, § 1973), the reasonable value of the services may be recovered and that the statute of limitations does not commence to run until the termination of the services, which, in such cases, is usually upon the death of the promisor. [Citations.] ' ''

This statement certainly does not aid the plaintiff here. The executor relies upon the same statement in the same case and as restated in *Chahon* v. *Schneider, supra,* 117 Cal.App.2d 334, at page 335, to support its contrary contention. It is pointed out that in this case the services terminated in 1953 at which time the executor contends the statute commenced to run.

However, in the case of *Rooney* v. *Sullivan,* 169 Cal.App.2d 432 [337 P.2d 543], the services terminated over two years prior to the death of the promisor. As to the contention that the statute of limitations barred action on the claim for services, the reviewing court held, at page 434: "Unless there is a prior repudiation of the promise to compensate by will of which the promisee has knowledge, in which event the statute might commence to run from the date of such repudiation [citation], logic compels the conclusion that no cause of action upon the contract implied in law arises until the death of the promisor without carrying out the express promise to compensate by will, since it is the failure of the promisor to carry out the express promise which gives rise to the implied promise to pay the reasonable value.''

In the subsequent case of *Vito* v. *McDonald,* 179 Cal.App.2d 509 [3 Cal.Rptr. 842], the holding of *Rooney* was followed. In *Vito,* the decedent lived with the Vito family continuously from 1932 to 1945. At that time the Vitos moved to a smaller home and the decedent remained in the prior home and paid rent to the new occupant. In 1953 the Vitos again moved to a larger home where they had room for the decedent. He was taken into the home and cared for by Mrs. Vito until his death in 1957. At about the beginning of World War II the decedent promised Mrs. Vito that if she would permit him to live with her family as he had in the past she would receive all of his insurance and retirement benefits at his death. When he returned to the Vito family home in 1945, he reiterated the promise to Mrs. Vito. The promise was not carried out. She filed a claim against his estate and, after it was rejected, brought an action to recover for the reasonable value of services rendered. The administrator contended that the statute of limitations barred the claim insofar as the period of time from 1932 to 1945 was concerned. The appellate court rejected the contention and held, under authority of *Rooney,* that the statute of limitations did not commence to run until the date of death of the decedent.

In *Ludwicki* v. *Guerin, supra,* 57 Cal.2d 127, at page 130, it is said: "A contract to make a will is breached only if it has not been complied with at the time of the promisor's death, and for this reason the cause of action for the breach does not ordinarily accrue or the period of limitation commence to run until the promisor dies." (See also *Brewer* v. *Simpson,* 53 Cal.2d 567, 593 [2 Cal.Rptr. 609, 349 P.2d 289]; *Toney* v. *Security First Nat. Bank,* 108 Cal.App.2d 161, 166 [238 P.2d 645].)

In the third amended complaint the plaintiff alleges that the sole reason that plaintiff did not make demand for payment for the value of her services prior to the death of decedent was that decedent had promised her orally that he would leave her his entire estate upon his death in payment thereof, but upon his death, said decedent left his entire estate to other persons, and left no part of it to plaintiff. It is alleged that the decedent died on or about October 31, 1963. The record discloses that the action was commenced on May 7, 1964. It was filed well within a two-year period after the death of the decedent. It therefore does not appear from the face of the complaint that the action was rendered unenforceable by reason of the statute of limitations and the point is not well taken by demurrer.

██ As a further ground of demurrer the executor states there is a misjoinder of parties defendant in that the real parties in interest are improperly joined with the executor as defendants. The executor concedes, as it must, that it is a proper party. On appeal it is argued that misjoinder consists of naming the real parties in interest in the caption, entitling the third amended complaint as one for quasi-specific performance, praying for a declaration of a trust, and the use of the plural "defendants" in the body of the complaint. It is not open to the executor to complain that the real parties in interest are misjoined. Only the person misjoined may complain. As to the executor, the improper joinder of its named co-defendants does not adversely affect its interests in the action. (*Division of Labor Law Enforcement* v. *Barnes, supra*, 205 Cal.App.2d 337, 345; *Wuest* v. *Wuest*, 53 Cal.App.2d 339, 344 [127 P.2d 934]; 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, § 1213, p. 417.)

██ The last ground of demurrer stated by the executor appears to be predicated upon the fact that the plaintiff failed to plead the claim against the estate, either in *haec verba* or according to its legal effect. The complaint alleges: "That on or about April 3, 1964, plaintiff duly filed her verified claim for payment of the debt sued herein with the clerk of the above entitled court, notice of which claim was thereupon duly given to defendant as required by law; that thereafter, on or about April 13, 1964 defendant rejected said claim in writing and mailed a copy of said rejection and a notice thereof to counsel of record for plaintiff."

The demurrer states: "That Paragraph III of said third amended complaint is uncertain in the following particulars, to-wit:

"(1) That plaintiff has failed and neglected to allege the rejected creditor's claim, the written instrument upon which her cause of action is founded, either in *haec verba* or according to its legal effect, and that by reason of said failure of the plaintiff to so declare upon such written instrument, it is not possible to know the sufficiency or insufficiency of the alleged claim, or what is meant by plaintiff by a 'verified claim,' whether the creditor's claim was in fact presented alleging the same cause of action now stated in said third amended complaint, to which named defendant the plaintiff makes reference in the allegation of said paragraph III that 'notice of which claim was thereupon duly given to defendant . . .'; that it is impossible to tell which defendant plaintiff

refers to in the statement thereafter in said paragraph that 'that defendant rejected said claim in writing . . .' that it is impossible to tell whether the creditor's claim filed by plaintiff and allegedly 'verified' by her was in fact supported by the claimant's affidavit as required by Section 705 of the Probate Code;

"(2) That whereas, by paragraph II of said third amended complaint it is alleged that no services were rendered by plaintiff to the decedent after 'about June 15, 1953,' and that the defendant executor was mandated by Section 708 Probate Code to disallow plaintiff's quantum meruit claim by reason of the statute of limitations plaintiff has made no allegations of fact in paragraphs II or III of said third amended complaint invoking an estoppel of defendant to plead the statute of limitations; said paragraph III is therefore uncertain as to the contents of the rejected claim, prima facie, to escape the impact of the statute of limitations as justifying, on the basis of the facts alleged by plaintiff, any rightful claim against the estate of the decedent."

In drafting the demurrer the executor was apparently under the erroneous assumption that an action for damages or quantum meruit is founded upon a writing, i.e., the claim filed in the estate, and that the rule that where a cause of action is founded upon a writing, the writing must be pleaded in *haec verba* or according to its legal effect is applicable. The creditor's claim is not the foundation of such a cause of action. The cause of action arises from and is founded upon the services claimed to have been rendered to the decedent during his lifetime. However, the plaintiff is deemed to be a creditor of the decedent and must file his claim against the estate of the deceased promisor as a condition precedent to bringing suit. (*Chahon* v. *Schneider, supra,* 117 Cal.App.2d 334, 346.) A complaint which does not allege the presentation and filing of a claim fails to state a cause of action and is subject to a general demurrer on that ground. (*Burke* v. *Maguire,* 154 Cal. 456 [98 P. 21]; *Morse* v. *Steele,* 149 Cal. 303 [86 P. 693]; *Smith* v. *Smith,* 126 Cal.App.2d 194 [272 P.2d 118]; *Chahon* v. *Schneider, supra.*) The allegations of the third amended complaint are sufficient as against a general demurrer.

 As to the multifarious charges of uncertainty, some of the matters appear presumptively to be within the knowledge of the executor. A demurrer does not lie to such matters. (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 298 [295 P.2d

113]; *Turner* v. *Milstein,* 103 Cal.App.2d 651, 658 [230 P.2d 25].) Bound by the rule that both the trial court and the reviewing court must accept the allegations of the complaint as true, it must be accepted that plaintiff did in fact present a claim; that the claim was verified; that notice thereof was given to the executor; and that the claim was, in fact, rejected. The charges of uncertainty running to the statute of limitations have been disposed of by the discussion of that point elsewhere in this opinion.

It is therefore ordered:

1. That the judgment dated January 5, 1965, is amended by adding a paragraph dismissing the cause of action based on the theory of quasi-specific performance of an oral promise to devise and bequeath property by will;

2. That in the interests of justice, and acting under the discretion granted this court by rule 2(c) of the California Rules of Court, the notice of appeal dated January 5, 1965, is declared to be a premature notice of appeal from the judgment as amended;

3. That the portion of the amended judgment dismissing as to the executor the cause of action for quasi-specific performance and to impose a trust is affirmed;

4. That the portion of the amended judgment dismissing the cause of action for the reasonable value of services rendered is reversed; and

5. That each side shall bear its own costs on appeal.

(See *Shepardson* v. *McLellan, supra,* 59 Cal.2d 83, 90-91.)

Stone, Acting P. J., concurred.